**STATE of Missouri, Appellant,**

v.

**Johnnie L. MARQUESS, Respondent.**

**No. WD 56037.**

Missouri Court of Appeals,
Western District.

March 16, 1999.

---

Peggy Gustafson, Pros. Atty., Kansas City, for Appellant.

Jarrett Johnson, Public Defender, Kansas City, for Respondent.

SPINDEN, Judge.

The state charged Johnnie L. Marquess with one count of manufacturing methamphetamine, one count of creating a controlled substance, one count of possessing illegal drug paraphernalia, one count of possessing a controlled substance and two counts of endangering the welfare of a child. Mar-

quess responded to the state's charges by filing a motion to suppress evidence which officers obtained during their search of his house. Marquess argued that the officers' search violated his constitutional rights. He asserted that, even though another resident of the house consented to the search, officers' warrantless search was unlawful because he was present when they searched and he objected to their search. The circuit court sustained Marquess' motion to suppress, and the state filed this interlocutory appeal. Because we are unable to ascertain from the record the timing of Marquess' objection to the search—crucial to determining whether the officers' search was lawful—we remand to the circuit court for further evidence.

At the suppression hearing, the state presented evidence [1] that, on February 27, 1997, Bill Davidson, an officer with the Independence police, saw Kenton Griffey in a car parked in front of a house at 324 East Walnut in Independence. Suspecting Griffey of stealing the car or its contents, Davidson stopped and asked Griffey some questions. Davidson saw Griffey throw something on the car's floorboard. After Griffey gave Davidson his driving license and told Davidson that he owned the car and lived at 324 East Walnut, Davidson learned that authorities had issued a warrant for Griffey's arrest, so he arrested Griffey. While searching Griffey's car, Davidson found on the floorboard a wet, white powdery substance which had a chemical odor. Davidson believed that the substance was recently-manufactured methamphetamine.

Because Griffey told Davidson that he lived at 324 East Walnut, Davidson went to the house to ask about Griffey. When Davidson knocked on the door, Diane Daniels and Marquess responded. They told Davidson that they were residents of the house and that Griffey lived there, too. Marquess invited Davidson into the house's living room. Inside the house, Davidson smelled an odor which he believed was associated with methamphetamine production. Davidson told Daniels and Marquess that he was concerned that methamphetamine was being produced somewhere in the house, and Marquess became uncooperative and did not want to talk further. Davidson asked Marquess for permission to search the house. Marquess did not respond.

Daniels, however, remained cooperative. When Davidson asked her about the odor, she made a vague reference to its emanating from the basement. At some point, Davidson and Daniels went in the bedroom which Daniels shared with Marquess, and Marquess did not follow.[2] Davidson asked Daniels whether any narcotics were in the house, and Daniels pulled a tray of what appeared to be marijuana from underneath the bed. She said that the substance belonged to her. Because of the odor and the suspected marijuana, Davidson called the Drug Enforcement Unit of the Independence Police Department.

What happened next is the crucial evidence which the record does not explain adequately. The record establishes that Daniels gave her consent to search the house and that police searched the bedroom and found drug paraphernalia in a bed stand. Daniels told them that the paraphernalia belonged to Marquess. Daniels also took a white, powdery substance and other drug paraphernalia from her purse and gave them to police. Police then arrested Daniels and Marquess. We know that Marquess changed his apparent attitude of acquiescing to the search of the bedroom and voiced objection to officers' searching his house, but we do not know sufficiently when that occurred.

While in the bedroom, Daniels told Davidson that two children, ages seven and ten, were in the house. Because no adults would be in the house to care for the children after Daniels' and Marquess' arrest, Detective Brad Slaybaugh of the Drug Enforcement Unit searched the house for the children. He found one child in a bedroom on the first floor and the other child downstairs in the basement. While looking in the basement,

1. Marquess and police officers offered widely varying versions of the events. These are the facts as found by the circuit court in its findings of fact and conclusions of law.

2. Marquess was not under arrest or restrained when Davidson and Daniels went to the bedroom, and he was free to follow them into the bedroom but did not.

Slaybaugh saw glassware, plastic bags, red stained coffee filters, syringes, and other equipment which he believed had been used to manufacture methamphetamine. Officers included what Slaybaugh saw in the basement in their application for a search warrant which the circuit court issued.

On September 26, 1997, the circuit court convened a hearing on Marquess' motion to suppress. The circuit court ordered the suppression of all tangible evidence recovered from 324 East Walnut. The state appeals the circuit court's ruling.

The circuit court hinged its decision to suppress the evidence on Marquess' refusing to allow a search. It concluded, "Any consent given by Diane Daniels was vitiated by Marquess['] refusal to consent to the search when asked to by Detective Slaybaugh." We cannot determine from this record when Marquess objected to the search, and the timing of his objection is crucial to determining this case.

If the search of the bedroom took place before Marquess refused consent, the evidence should not have been suppressed because Marquess, by standing by silently in the living room, acquiesced in Daniels' consent for the search of the bedroom. *See State v. White,* 755 S.W.2d 363, 367 (Mo.App. 1988) (consent is valid when target of search is present and remains silent while third party gives consent). If the officers' arrest of Marquess was pursuant to a lawful search of the bedroom, the items discovered by Slaybaugh while he looked for the children were admissible because of exigent circumstances and the plain view doctrine. *See State v. Hicks,* 853 S.W.2d 955, 956 (Mo.App. 1993) (exigent circumstances exist if delay in search warrant would endanger life); *State v. Taylor,* 857 S.W.2d 482, 485 (Mo.App.1993), *cert. denied,* 510 U.S. 1056, 114 S.Ct. 719, 126 L.Ed.2d 683 (1994) (if exigent circumstances justifies intrusion into defendant's house and officer inadvertently observes evidence in plain view, the evidence may be seized without a search warrant).

If, however, the search of the bedroom took place after Marquess refused consent, the issue—which is one of first impression in Missouri—would become whether police can search a house when they have valid consent from one member of a household but have been told by another member of the household, who is present at the time of the search, that they may not search the house without a search warrant. We should not endeavor to resolve this issue in this case until we are certain of the facts. The facts established at the suppression hearing regarding the timing of the search of the bedroom and Marquess' objecting to the search were equivocal at best.

Davidson said that he did not search the bedroom until Slaybaugh arrived at the house. When Slaybaugh arrived, Davidson said that they asked and received Daniels' consent to search. Davidson testified:

> After she signed my consent we did check the—the bedroom area that she said that was hers and her boyfriend Johnnie Marquess. We did locate some other drug paraphernalia in the bed stand next to the bed, and she stated that was Johnnie's.

> She was—she was arrested for the green leafy substance and also for the point where she pulled out her purse some white powder substance and some other drug paraphernalia. Mr. Marquess was arrested for the drug paraphernalia charges.

Davidson did not testify whether officers again asked Marquess for his consent to search. Davidson's testimony, therefore, does not shed much light on when the search occurred in relation to when Marquess refused to consent.

Slaybaugh testified:

> [Davidson] advised that in talking with Ms. Daniels that he became—or he had gained verbal consent for the bedroom for which they were now located in.

> He said Ms. Daniels even informed him that she had some quantity of marijuana on a tray inside that residence and that she was willing to allow officers into the rest of the house.

> I talked to Ms. Daniels then. I asked her along with Officer Davidson if she would sign a written consent to search[.]

> . . . .

[I]mmediately upon my coming into the house you could detect some type of chemical odor coming from within the house. In talking to [Davidson] there was paraphernalia, and there was empty plastic baggies that I noticed on the nightstands inside the bedroom where we was mainly concerned.

. . . .

I went back in [the living room] after Ms. Daniels signed the consent to search. I went in and contacted Mr. Marquess. I asked him for his consent to search the rest of the residence, and he was sitting in the chair directly inside the living room right inside the front door. He advised me that he would not allow me consent to search the house.

Slaybaugh's testimony suggests that Davidson had already searched the bedroom when he arrived at the house and that Marquess waited until after the search of the bedroom to voice his objections to any further searching.

The only other evidence regarding Marquess' refusing to consent was Marquess' testimony. He testified that he refused to give consent to search the entire time from the moment Davidson stepped into his house.

In light of the evidence presented at the suppression hearing, the circuit court found that, when Davidson first asked Marquess for consent to search the house, "Marquess did not answer affirmatively, verbally or nonverbally." Marquess, however, later objected to any search. The circuit court's findings suggest that Marquess objected and refused consent to search the house *before* the police searched the bedroom. The circuit court's findings said, "Based upon the Daniels' consent and despite Marquess' refusal, the police *further*[3] searched Daniels' bedroom and found other drug paraphernalia in the bed stand next to the bed."

More significantly, the only evidence which might support this finding was Davidson's testimony, and it, as we noted earlier, sheds virtually no light on the crucial issue of timing. The only definitive evidence on this issue was Slaybaugh's testimony which suggested that the search of the bedroom took place before Marquess refused his consent to search. The circuit court obviously rejected Slaybaugh's theory, and we defer to the circuit court's assessment of the credibility of witnesses. *State v. Villa–Perez,* 835 S.W.2d 897, 902 (Mo. banc 1992), *abrogated on other grounds recognized by State v. Bigsby,* 891 S.W.2d 160 (Mo.App.1995). Because the circuit court obviously did not believe Marquess' testimony that he voiced his objections to any search of the house from the very beginning, we are left with no sound basis for the circuit court's determination that Marquess objected to a search of his house before officers searched the bedroom.

Although the state bears the burden of justifying a warrantless search and demonstrating that the search falls within an exception to the warrant requirement, *State v. Burkhardt,* 795 S.W.2d 399, 404 (Mo. banc 1990), this is not a case in which the state did not carry its burden of producing evidence. Section 542.296.6, RSMo 1994; *State v. Franklin,* 841 S.W.2d 639, 644 (Mo. banc 1992). Instead, this is a case in which the circuit court rejected both the state's and Marquess' evidence and apparently crafted its own version of the essential facts.

Because of the record's lack of sufficient evidence to support the circuit court's finding that Marquess refused to give his consent to search before police searched the bedroom, the issue of whether the evidence should have been suppressed cannot be resolved. We, therefore, remand this case to the circuit court for further proceedings.

HAROLD L. LOWENSTEIN, Presiding Judge, and VICTOR C. HOWARD, Judge, concur.

---

**3.** We added the emphasis. The use of the word "further" suggests that the circuit court did not focus on the timing of Marquess' objection.