THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JESSIE O. WALKER, Defendant-Appellant.

Second District   No. 84—308

Opinion filed January 17, 1985.

G. Joseph Weller and Manuel Serritos, both of State Appellate Defender's Office, of Elgin, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Phyllis J. Perko and Andrea Becker, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE NASH delivered the opinion of the court:

After a bench trial, defendant, Jessie O. Walker, was convicted of the offense of unlawful restraint (Ill. Rev. Stat. 1981, ch. 38, par. 10—3(a)) and was sentenced to a term of 30 months' probation and to 50 hours of public service. Defendant appeals, contending he was not proved guilty beyond a reasonable doubt as the victim of the alleged offense was defendant's minor child over whom he was lawfully exercising a parental right to custody and control.

Defendant and his wife, Vera, were separated and she was living in a residence in Wheaton with their 2½-year-old son, Brynell. Defendant came to the house at 8:30 a.m. on December 6, 1982, to visit with his son, which Vera allowed, and during the visit defendant

wrote a suicide note which he gave to Vera to read. In it he said that he no longer wished to live, or to let his son live, in a world like this. The note also stated "[t]here is only one way out for us[.] I will take my wife with us if we can't live as a family then let us die as one." Defendant produced a knife and asked Vera to sit down with him; she declined and, saying she was getting coffee, went into the kitchen and out the back door. Vera called the police from a neighbor's house.

Vera testified defendant had a good relationship with his son and had not pointed the knife at either her or Brynell. She was frightened when she left the house and stated she was "concerned about both of them, but mostly Brynell." When the police arrived at 11:15 a.m., Vera asked defendant to release the boy, but he refused. He also refused police requests to release the child and threatened to level the house if they tried to enter.

The standoff continued until about 2 p.m., when defendant allowed the child to leave the house. In the interim, defendant held the boy to a window, when requested by the police, so they could see he was unhurt. At about 1 p.m. officers noted a strong odor of natural gas emanating from the house and had the gas supply to the house shut off. Officers also noted flashes of light from inside the house and, when they subsequently entered, found an electrical cord which had been stripped and that all the burners on the gas stove had been turned on. When the officers entered the house after the child had been released, defendant was seated upon a radiator holding a knife to his stomach. He threatened to stab himself and was subdued by the officers.

Defendant testified he came to the house in which his wife was living only to visit their son. He acknowledged writing the note and stated he wanted some time with the boy before killing himself. Defendant had no matches and stated there had been an accidental spark when he was splicing the electrical cord. He said that the boy played with his toys and watched television during this period and never asked to leave.

■ Defendant argues that as his son was not injured and as defendant was visiting the child with the mother's permission, he acted with lawful parental authority in detaining him in these circumstances, as the unlawful restraint statute does not apply to the parent-child relationship.

Section 10—3(a) of the Criminal Code of 1961 provides:

"A person commits the offense of unlawful restraint when he knowingly without legal authority detains another." Ill. Rev. Stat. 1981, ch. 38, par. 10—3(a).

A parent's right to exercise authority over a child is broad, but it is not absolute. In matters of discipline or punishment, a standard of reasonableness has been applied to determine whether a parent's conduct towards his child was legally justified and authorized by law. (*People v. Ball* (1974), 58 Ill. 2d 36, 39, 317 N.E.2d 54; *People v. Warner* (1981), 98 Ill. App. 3d 433, 435, 424 N.E.2d 747; *People v. Virgin* (1978), 60 Ill. App. 3d 964, 968, 377 N.E.2d 846.) In *Ball* and *Virgin* the test of reasonableness was considered in finding that the physical injuries there inflicted for punishment by a parent, or one standing *in loco parentis*, were not legally justified so as to be a defense to charges of battery. In *Warner*, a parent's conviction for unlawful restraint was sustained where the punishment imposed upon a child was unreasonable confinement in an unventilated room for an extended period.

In each of the above cases to which we have referred, the courts relied upon *Fletcher v. People* (1869), 52 Ill. 395, in which our supreme court upheld the conviction of defendant for false imprisonment[1] of his own child. Fletcher had confined his blind son in an unheated cellar for several days in winter in an effort to rid the boy of a vermin infestation. The reviewing court rejected defendant's argument he was merely exercising his lawful parental authority over the child and noted that while parents do have a large discretion in the exercise of authority over their children, "this authority must be exercised within the bounds of reason and humanity. If a parent commits wanton and needless cruelty upon his child, either by imprisonment of this character or by inhuman beating, the law will punish him." 52 Ill. 395, 397.

In our view, just as a parent must conform to a standard of reasonableness when punishing his child, so too must he when confining or detaining the child for reasons other than punishment.

■■ In the present case defendant admits he initially intended to take his own life together with the lives of his child and wife. After his wife left the house, defendant turned on the gas jets and apparently attempted to ignite the fumes with an electrical spark; he also exhibited a knife in a threatening manner. It was in this context that defendant over a three-hour period of time refused to release the young child to either the mother or police officers, and threatened to level the house if the officers tried to enter it.

---

[1]The present offense of unlawful restraint has replaced the former offense of false imprisonment. (Ill. Ann. Stat., ch. 38, par. 10—3, Committee Comments, at 586 (Smith-Hurd 1979).)

We agree with the trial court that in these circumstances defendant's detention of the child was unreasonable and without lawful authority. We reject defendant's argument he was merely exercising his parental right to visit with his son and was thus authorized to detain the child. Defendant was not immune from prosecution for unlawful restraint in these circumstances, and his conduct towards the child was subject to the standard of reasonableness. That is the rule Illinois reviewing courts have applied in cases relating to physical punishment of a child by a parent, and it appears also to have been applied by the court in *Fletcher v. People* (1869), 52 Ill. 395, to parental detention of a child which was not intended as punishment. See *contra, State v. Lawrence* (1983), 135 Ariz. 569, 663 P.2d 561.

Defendant agrees his conduct was not rational and was misguided and ill-advised; while he does not state that it was a reasonable exercise of parental authority to hold the child hostage in that dangerous and volatile situation without the protection of law, such would be the result should we sustain his argument. We do not do so.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

STROUSE and UNVERZAGT, JJ., concur.