Strafford
No. 88-376

# THE STATE OF NEW HAMPSHIRE

## v.

# CHARLES BRUCE

December 8, 1989

*John P. Arnold,* attorney general (*John S. Davis,* assistant attorney general, on the brief and orally), for the State.

*James E. Duggan,* chief appellate defender, of Concord, by brief and orally, for the defendant.

BROCK, C.J. The defendant, Charles Bruce, was convicted by a jury in the Superior Court (*Nadeau,* J.) of two counts of aggravated felonious sexual assault, RSA 632-A:2 (Supp. 1988), and one count of criminal restraint, RSA 633:2. On appeal, the defendant argues that: (1) the trial court erred when it admitted into evidence, on recross-examination, defendant's testimony about his involvement with marijuana, and (2) the trial court erred in failing to dismiss the indictment for criminal restraint because a child under sixteen cannot be unlawfully confined by a parent. For the reasons set forth below, we affirm.

The defendant's convictions arise from incidents which took place during the summer of 1987. The divorced parents of the victim agreed that she would spend the summer with her father, the defendant, in New Hampshire. At the time, the victim was thirteen years old and had been living with her mother and stepfather in Kansas.

The charge of criminal restraint was based on the victim's testimony that, on at least one occasion, the defendant had her undress, he bound her ankles and hands, he placed a hood over her head, he tied her to a ceiling beam and he hit her with either his hands or a switch. The victim suffered from scoliosis and, during

these incidents, was not permitted to use the back brace which she was supposed to wear fourteen hours each day.

The victim also testified that during that summer her father sexually assaulted her. One evening, her father gave her hot chocolate with Kahlua and then took her to his bedroom where he performed cunnilingus on her. On at least one other occasion, the defendant came into the victim's bedroom, got into her bed and had sexual intercourse with her. Upon returning to Kansas, the victim related these incidents to her mother, and they became the basis for the two charges of aggravated felonious sexual assault.

In addition to alleging that her father had assaulted her, the victim reported that he had marijuana stored in his house. The police searched the house, discovered the marijuana and charged the defendant with possession. Prior to the commencement of the jury trial on the sexual assault and criminal restraint charges, the defendant pleaded guilty to possessing marijuana.

The record discloses no motion *in limine* or other effort by the defendant prior to trial to restrain the State from introducing the marijuana evidence. In conference, at the commencement of trial, the prosecutor discussed with the court and counsel for the defendant the marijuana possession. The prosecutor acknowledged the potential prejudicial effect of such evidence and stated that he would attempt to introduce the marijuana evidence only under limited circumstances. In particular, the prosecutor made it clear that he would seek to introduce evidence that the victim knew about the marijuana if the defendant attempted to ascribe a motive for the victim to fabricate her allegations.

The court did not rule during the conference on the admissibility of the marijuana evidence. Instead, the court deferred ruling until the issue was raised during trial. In making this decision, the court acknowledged that admissibility would be dependent on the circumstances at the time and suggested that it "would be admissible only in the event [the defendant] testifies and for the purpose of impeaching his credibility, and the same [for] hers." No further mention was made of the marijuana until the defendant, the last witness at trial, was testifying. During direct examination, the defendant testified that his daughter was not telling the truth. He also stated that she was "quite despondent" after being informed that she must return to Kansas City.

On cross-examination, the prosecutor asked: "Do you know of any reason why your daughter would lie about . . . you?" The defendant expressed reluctance to speculate, and counsel for the defendant

interjected with a supporting but non-specific objection. The court allowed the defendant to answer.

■ Given the importance of this question to our inquiry, we first determine whether the trial court erred in overruling the defendant's objection. The case largely rested on the victim's testimony and credibility. Certainly the response would be relevant. N.H. R. Ev. 402. The State inquired only whether the defendant was aware of a motive and did not directly solicit a description of the defendant's theory. The question, as it was asked, did not call for speculation. N.H. R. Ev. 602. The defendant had testified on direct examination that the victim was not telling the truth, and it was proper for the State subsequently to make inquiries of the defendant in regard to the victim's truthfulness. N.H. R. Ev. 607. A trial court's ruling on the admission of evidence will be upheld, absent an abuse of discretion. *State v. Sullivan*, 131 N.H. 209, 215, 551 A.2d 519, 523 (1988). We hold that the trial court did not abuse its discretion in permitting the defendant to respond to the question as asked.

The objection having been overruled, the prosecutor then asked: "You're not aware of any motive that she would have; is that correct?" The defendant paused and then responded: "No." There was no objection raised at the time of the defendant's response, and the State concluded cross-examination with no further exploration of the victim's motive.

Given the compound question, it is difficult to determine from the record exactly what the defendant meant with his negative response; either he was not aware of a motive, or the statement that he was not aware of a motive was not correct. The defendant, on appeal, has asserted that this unqualified response on cross-examination gave credibility to the victim, devastated his defense and necessitated further explanation. Therefore, the defendant's counsel, on redirect examination, sought to clarify the defendant's response and asked: "Now, the last question I have is one that Attorney Soldati asked. Do you know any reason why [the victim] would tell these lies about you?" The defendant responded: "As I said before, I can speculate. I don't have any concrete proof of it." This statement addressed the confusion which may have been created by the response on cross-examination. The defendant acknowledged that he was aware of a motive but that it was speculative.

The defense counsel then asked: "What do you think?" This question was clearly different from the one that had been asked on cross-examination. Defense counsel elected to go beyond the

awareness of motive and called for the defendant to explain his theory as to why his daughter had lied. The prosecutor promptly objected because the question called for speculation on the part of the witness. The objection was overruled, and the defendant testified that he believed his daughter was attempting to get back at him for returning her to Kansas.

On recross-examination, the State sought permission of the court to introduce testimony that the victim knew of the defendant's involvement with marijuana, as evidence that she did not need to fabricate the allegations of sexual assault in order to get back at her father. The court ruled in favor of admissibility, and the prosecutor then elicited testimony from the defendant in regard to the marijuana for that purpose.

We cannot agree with the defendant's assertion that the State impermissibly opened the door for itself to introduce the marijuana testimony. First, it was the defendant who raised the issue of the victim's truthfulness and unhappiness on being returned to Kansas City. Second, the question asked by the prosecutor on cross-examination was properly allowed, and the answer dealt only with the existence, not the description, of motive. The responses to this question and the first follow-up question on redirect examination adequately and accurately represented the defendant's position that his daughter had lied but that he could only speculate on her motive. The prosecutor's question necessitated no further exploration of the victim's untruthfulness and the jury had not been mislead.

It was, at this point, that the defense attorney, over the State's objection, elected to go beyond any necessary rehabilitation of his witness, and brought forth the defendant's theory as to his daughter's motive. The defendant's counsel did so knowing that the prosecutor intended to use the marijuana evidence in response to the ascription of a motive, and he was well aware that the judge had not precluded its admissibility under those circumstances.

■   The door is opened when a misleading advantage is created, justifying the introduction of otherwise inadmissible evidence. *State v. Crosman,* 125 N.H. 527, 531, 484 A.2d 1095, 1098 (1984). Although we have noted that the prosecutor's question on cross-examination may have created some confusion, no misleading advantage was created by the State which required the defendant to actually describe the victim's motive. It was the defendant's testimony on redirect examination, not the State's question on cross-examination, which led to the introduction of the marijuana evidence, which may have been otherwise inadmissible.

■ "[T]his court will defer to the trial court's ruling on the admission of evidence, absent an abuse of discretion." *State v. Sullivan*, 131 N.H. at 215, 551 A.2d at 523. We find no such abuse of discretion and hold that the trial court did not err in permitting introduction of the defendant's marijuana testimony on recross-examination.

■ The defendant notes that the trial court admitted the marijuana evidence without a limiting instruction. We have held that a trial court must provide limiting instructions when prior convictions are introduced to impeach the credibility of a defendant. *State v. Cote*, 108 N.H. 290, 297, 235 A.2d 111, 116 (1967). In this case, the prosecutor did not offer evidence of a prior conviction. He asked the defendant about his involvement with marijuana. During his questioning, he did inquire as to whether the defendant faced charges, but he did not attempt to disclose the disposition of that action. It was the defendant's counsel who subsequently elicited testimony regarding his client's guilty plea.

■ A review of the record before us reveals that no limiting instruction was requested by counsel. The trial court clearly recognized the prejudicial nature of the marijuana testimony. But the court could reasonably conclude that, as a matter of trial tactics, the defendant did not wish to have his marijuana involvement further emphasized by an instruction relating to it. *See State v. Bean*, 120 N.H. 946, 949, 424 A.2d 414, 416–17 (1980). It is the obligation of counsel to request instructions limiting the scope of evidence. *State v. Allen*, 128 N.H. 390, 398, 514 A.2d 1263, 1269 (1986); N.H. R. Ev. 105. In the absence of such a request, we find that the trial court did not err when it admitted the marijuana evidence without limiting its purpose.

The second issue which the defendant raises involves interpretation of the criminal restraint statute, RSA 633:2. He argues that the trial court erred in denying his motion to dismiss the criminal restraint indictment, because a parent cannot unlawfully confine a child under sixteen.

■ Criminal restraint has three elements: (1) the actor must act knowingly; (2) the victim must be exposed to the risk of serious bodily injury; and (3) the act must confine the victim unlawfully. RSA 633:2, I; *see State v. Dustin*, 122 N.H. 544, 446 A.2d 1186 (1982). The third element is further defined in RSA 633:2, II:

"The meaning of 'confines another unlawfully,' as used in this section and RSA 633:3, includes but is not limited to confinement accomplished by force, threat or deception or, in the case of a person who is under the age of 16 or incompetent, if it is accomplished without the consent of his parent or guardian."

The defendant interprets this provision to mean that no confinement of a child under sixteen by a parent, regardless of means or circumstances, is subject to the criminal restraint statute. We disagree.

In construing a provision of a statute, the provision must be construed in the context of the statute as a whole. *Theresa S. v. Sup't of YDC*, 126 N.H. 53, 55, 489 A.2d 592, 593 (1985) (citations omitted). RSA 633:2, II, when read in its entirety, specifically describes unlawful confinement as confinement which may be accomplished by means which include force, threat, and deception and, in the case of children under sixteen, as confinement without parental consent. The exception relating to children is an apparent recognition of the trusting and dependent characteristics of immaturity, which make children more susceptible to means of confinement even in the absence of force, threat, or deception.

We construe the words and phrases of a statute according to the common and approved usage of language. *State v. Hart*, 130 N.H. 325, 326, 540 A.2d 859, 859 (1988); RSA 21:2. In interpreting RSA 633:2, II in that manner, we conclude that the legislature clearly intended that non-parents be subject to prosecution for criminally restraining a child under sixteen, if the confinement, regardless of means, was accomplished without parental consent. However, the statute does not provide parents with an unqualified lawful right either to confine their children or to consent that others confine them. To the contrary, having considered the plain meaning of the statute, *see Theresa S. v. Sup't of YDC*, 126 N.H. at 55, 489 A.2d at 593, we hold that parents, although not subject to the provision regarding confinement of children under all circumstances, may be found to have unlawfully confined their children by using means such as force, threat or deception.

We reject the contention that the legislature did not intend to permit the use of the criminal restraint statute against parents. Although the special relationship between parent and child must be recognized, the statute does not provide an unqualified

exemption from prosecution for parents who unlawfully confine their own children. *See* RSA 627:1 and 627:6, I.

*Affirmed.*

All concurred.