Darrell Lee McFARLAND *v.* Judy Carol McFARLAND

94-288                                                     885 S.W.2d 897

Supreme Court of Arkansas
Opinion delivered October 31, 1994

*Shock, Harp, & Associates*, by: *J. Randolph Shock*, for appellant.

*Bethel & Cromwell*, by: *Jan Cromwell*, for appellee.

DAVID NEWBERN, Justice. Darrell Lee McFarland, the appellant, and Judy Carol McFarland, the appellee, are divorced from each other. They have two children. When one of the children reached age 18 Mr. McFarland petitioned the Court which had rendered the divorce to terminate his support obligation for that child. He also asked that the divorce decree be modified to state that his obligation to support a younger child would terminate upon that child reaching age 18. Ms. McFarland resisted the modification, contending that the younger child had been held back in school, would not graduate from high school until about a year after reaching age 18, and would need support until that time.

The Chancellor declined to modify the decree in the way Mr. McFarland asked. Mr. McFarland argues here, as he did to the Chancellor, that a statute which permits a court to require

child support past majority while the child remains a high school student is unconstitutional. We agree with the Chancellor's conclusion that the statute is not unconstitutional, and thus we affirm his decision.

In *Matthews* v. *Matthews*, 245 Ark. 1, 430 S.W.2d 864 (1968), a noncustodial father sought to have his support obligation terminated when his daughter turned 18, rather than when she finished high school six months later. We said that if the Chancellor terminated support when the child reached 18 it could be assumed she would be forced to drop out of high school to support herself, "there being no obligation on the part of either parent for her continued maintenance." We said it was proper to require the father to continue support payments until his daughter finished high school because "a high school diploma is of almost inestimable value to a young person who seeks to make his or her own living."

The holding in the *Matthews* case was apparently codified in Ark. Code Ann.§ 9-12-312(a)(5)(A) (Repl. 1993) as follows:

> The court may provide for the payment of support beyond the eighteenth birthday of the child to address the educational needs of a child whose eighteenth birthday falls prior to graduation from high school so long as such support is conditional on the child remaining in school.

Mr. McFarland contends the statute violates the due process and equal protection clauses of the United States and Arkansas Constitutions. He argues that his right to direct the care and upbringing of his child is a fundamental right, therefore warranting analysis under the "strict scrutiny" standard. In the alternative, he claims the classification made between divorced noncustodial parents and married and custodial parents is not rationally related to a legitimate government purpose. His argument is that, if the State's interest in educating children is to be enforced against a divorced, noncustodial parent, it should be enforced against married and custodial parents as well.

### 1. Strict scrutiny

Mr. McFarland argues that a parent has a fundamental liberty interest in the care and upbringing of his or her child. He cites

several cases that have declared parental rights protected by both the due process and equal protection clauses. The cases involve matters where a parent has been deprived of custody of a child, or where the child's name has been changed without notice to the parent. *See Bynum* v. *Savage*, 312 Ark. 137, 847 S.W.2d 705 (1993); *Davis* v. *Smith*, 266 Ark. 112, 583 S.W.2d 37 (1979); *Carroll* v. *Johnson*, 263 Ark. 281, 565 S.W.2d 280 (1978).

In the *Davis* case we said, "Certainly there remains no lingering doubt about the fact that the rights of parents to the care, custody, and upbringing of their children are the subject of constitutional protection on both due process and equal protection standards." The opinion also stated that "Parental rights are not, however, beyond limitation in the public interest. The State's constitutional interest extends to the welfare of the child. Parental rights are not immune from interference by the State in its role of parens patriae."

The cases on which Mr. McFarland relies are ones in which a parent has sought to exercise the parental role rather than to terminate, curtail, or forsake it. Even if it can be said that § 9-12-312(a)(5)(A) interferes somewhat with Mr. McFarland's ability to make decisions regarding his son's support, the interference clearly is not as great as in situations where a parent is deprived custody of a child by an action of the State. If we are to balance the interests involved in applying the due process standard, minimal interference with the parental "right" to stop supporting a child is warranted by the State's interest in seeing that the child obtains at least a high school education.

Other jurisdictions have decided cases involving a noncustodial parent's obligation to pay support beyond a child's majority. in order to meet various college expenses. In dealing with equal protection challenges in this context, none of these cases have found there was a fundamental right that warranted analysis under the strict scrutiny standard. *See In re Marriage of Vrban*, 293 N.W.2d 198 (Iowa 1980); *Birchfield* v. *Birchfield*, 417 N.W.2d 891 (S.D. 1988).

### 2. Rational basis

The alternative argument urges us to find that there is no rational basis for the State's imposition of a duty to support adult

children on noncustodial parents when no such duty is placed upon married and custodial parents. Mr. McFarland does not question the State's interest in providing a high school education for its citizens.

Mr. McFarland's position is that the statute requires him to support his adult child but leaves the matter of support in similar circumstances to the consciences of married parents or custodial divorced parents. The use of the word "custodial" with respect to a divorced parent of a child who has reached age 18 implies that parent continues to support the child into majority. Mr. McFarland does not demonstrate or argue that Ms. McFarland is not continuing to support the younger child or that she might not be required to do so until the child finishes high school. Neither party addresses the question whether § 9-12-312(a)(5)(A) might require a "custodial" parent of an adult child to render support until the child finishes high school. That question remains to be resolved another day. That leaves for determination whether there is a rational basis for the distinction drawn by the statute between a divorced parent and married parents.

The Iowa Supreme Court in *In re Marriage of Vbran, supra,* faced the question whether there was a rational basis for a statute requiring a divorced, noncustodial parent to support an adult offspring attending college. The Iowa Statute, Section 598.1(2), provided the court could require support for a child between the ages of 18 and 22 "who is . . . in good faith, a full-time student in a college, university, or area school. . . ." The noncustodial father argued there was no statute requiring a married, custodial parent to do likewise and there was no rational basis for such a classification. Here is what the Iowa Court said:

> Clearly higher education is a matter of legitimate state interest.
>
> However, this alone does not settle the issue raised. The further — and determinative — question is this: Does section 598.1(2) bear a rational relationship to this state interest and, if so, is the distinction drawn between the classes arbitrary or unreasonable?
>
> The respondent argues that divorced parents are arbitrarily ordered to support their adult children in order to

accomplish this stated purpose while no similar requirement is imposed upon married parents. However, this does not necessarily make the classification arbitrary or unreasonable. The statute was designed to meet a specific and limited problem, one which the legislature could reasonably find exists only when a home is split by divorce. *Childers* v. *Childers*, 89 Wash.2d 592, 600-602, 575 P.2d 201, 207 (1978); R. Washburn, *Post-Majority Support: Oh Dad, Poor Dad*, 44 Temple L.Q. 319, 329 n.55 (1971).

The legislature could find, too, that most parents who remain married to each other support their children through college years. *Making It: A Guide to Student Finances* 23 (A. Johnson ed. 1973); R. Freeman, *Crisis in College Finance? Time for New Solutions* 100 (1965); S. Harris, *A Statistical Portrait of Higher Education* 100, 114-23 (1972). On the other hand, even well-intentioned parents, when deprived of the custody of their children, sometimes react by refusing to support them as they would if the family unit had been preserved. *Childers* v. *Childers*, 89 Wash.2d 592, 602-604, 575 P.2d 201, 208 (1978).

■ The legislature could consider these facts and decide there is no necessity to statutorily require married parents to support their children while attending college but that such a requirement is necessary to further the state interest in the education of children of divorced parents. The differences in the circumstances between married and divorced parents establishes the necessity to discriminate between the classes. The statute is neither arbitrary nor unreasonable. *See Redmond* v. *Carter*, 247 N.W.2d 268, 271 (Iowa 1976).

■■ We agree with the Iowa Court's statement. We presume the statutes passed by the General Assembly are not unconstitutional, *Citizens Bank* v. *Estate of PettyJohn*, 282 Ark. 222, 667 S.W.2d 657 (1984), and we will uphold a classification in the face of an equal protection allegation if there is any basis for the classification. *Hamilton* v. *Hamilton*, 317 Ark. 572, 879 S.W.2d 416 (1994). The State's interest in education of its citizens and the likelihood that a child of divorced parents may have a more difficult time obtaining support in the process of obtaining an

education provides a sufficient basis for the classification between divorced, noncustodial parents and married, custodial parents.

Affirmed.