THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL L. ROBERTS, Defendant-Appellant.

Fourth District   No. 4—03—0892

Opinion filed July 30, 2004.

Phillip R. Lamkin (argued), of Lamkin & Lamkin, P.C., of Clinton, for appellant.

Jerry A. Johnson, State's Attorney, of Clinton (Norbert J. Goetten, Robert J. Biderman, and James C. Majors (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COOK delivered the opinion of the court:

Defendant, Michael L. Roberts, was charged and convicted by a jury of one count of domestic battery (720 ILCS 5/12—3.2(a)(1) (West 2002)). On appeal, he argues that the trial court did not properly instruct the jury and did not provide the jury with the proper verdict forms. We reverse.

On February 26, 2003, the State filed a one-count information, charging defendant with domestic battery of his 16-year-old daughter, T.S.R. 720 ILCS 5/12—3.2(a)(1) (West 2002). The information stated:

"[Defendant] on or about the 25th day of February, 2003, *** committed the offense of domestic battery, in that said defendant knowingly caused bodily harm to [T.S.R.], a household member of the defendant, in that the said defendant pulled on [T.S.R.'s] hair and struck [T.S.R.] in the face with his hand ***."

On August 14 and 15, 2003, the trial court conducted a jury trial. At trial, defendant testified that he entered his home on the evening of February 25, 2003, and found his wife Sharon and daughter T.S.R. screaming at each other. T.S.R. testified that the argument had been going on for 15 or 20 minutes before defendant entered and became aware of it. T.S.R. testified that the argument began when she tried to speak with Sharon and had to raise her voice to get Sharon's attention because Sharon was watching television and was not responding. Sharon testified that the argument resulted from T.S.R.'s refusal to end her telephone conversation with her boyfriend despite Sharon's repeated requests to do so.

Defendant testified that he walked in, saw Sharon and T.S.R. screaming at each other, and asked T.S.R. to quit fighting and to go to her room. Defendant stated that T.S.R. did not go to her room but instead continued to yell at Sharon. Sharon testified that T.S.R. became physically aggressive toward her and hit her a couple of times in the head. Defendant testified that after about five more minutes of continued shouting, he grabbed T.S.R. by the hair and tried to make her go to her room. Defendant testified that, with T.S.R.'s hair in both of his hands, he "push[ed] her forward," in the direction of her bedroom. Defendant stated that he let go of T.S.R.'s hair because he thought she was walking toward her room, but she ran into the kitchen instead. He stated that as T.S.R. ran into the kitchen, she hit the light switch really hard and the power went out in the home. Defendant went downstairs and flipped the circuit breaker back on. Defendant testified that when he came back upstairs, T.S.R. was once again screaming at Sharon. However, when T.S.R. saw defendant, she ran upstairs toward her room. Defendant and Sharon testified that when T.S.R. came back downstairs sometime later, she had a bruised eye and accused defendant. Both defendant and Sharon denied that defendant ever struck T.S.R., even accidentally.

T.S.R. testified that when defendant pulled her by the hair he also hit her in the face. T.S.R. stated that defendant hit her about five or six times with his palm on the right side of her head and on the left side of her face around her eye as he dragged her across the room. As evidenced by the photograph submitted as People's exhibit No. 1, there was significant swelling around T.S.R.'s left eye when the police came to the house that night. However, Terry Walters, an investigator for the Department of Children and Family Services (DCFS), testified that he examined T.S.R. the day after the incident and saw very little if any swelling around her eye. He stated that in the vast majority of situations where somebody had been hit in the eye with the hand, the swelling was pronounced for several days afterward. Walters testified

that it was his opinion that T.S.R.'s eye injury was not consistent with how she testified it was caused.

At the jury instruction conference after testimony had concluded, the State tendered and the court approved 14 jury instructions. One instruction approved by the court explained to the jurors that "a person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend another against the imminent use of unlawful force." The court approved this instruction as a possible justification for defendant's actions, although defendant specifically testified that he did not see or know that T.S.R. hit Sharon.

Instead, defendant wanted to show that he was justified in pulling T.S.R.'s hair and dragging her to the stairway to discipline her. Defendant offered two nonpattern jury instructions on the subject for the court's approval. The first, identified as "defendant's No. 5," stated: "A parent is legally justified in using reasonable force when necessary as part of reasonable discipline of a child." The second, identified as "defendant's No. 6," stated: "A parent is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary for the proper and necessary discipline of his child." Defense counsel explained that these instructions reflect a common-law defense to domestic battery that allows a parent to use reasonable physical force in disciplining his child.

The court rejected both of defendant's nonpattern instructions, stating:

> "When we *** start giving instructions that are non-IPI, those instructions must be those which accurately state the law. I am not convinced that those instructions that are tendered are appropriate to be given to the jury on this issue. I do not believe that the non-IPI instructions should be given. They are simple admittedly. They are brief admittedly. But I don't feel that they meet the remaining criteria, and so consequently, those instructions—that being defendant's exhibit [No.] 5 and defendant's [No.] 6—will be refused."

Also during the conference, defendant requested the court provide the jury with two sets of jury forms because there were two distinct physical acts alleged in the information: (1) pulling T.S.R.'s hair and (2) striking T.S.R. in the face. Defendant's forms would have allowed the jury to either convict or acquit defendant of domestic battery for each individual act. Over defendant's objection, the court gave only one set of verdict forms to the jury, explaining that although there were two allegations, there was only one charge, which combined both acts.

The 14 instructions tendered by the State and 2 verdict forms were delivered to the jury. The jury found defendant guilty of domestic battery (720 ILCS 5/12—3.2(a)(1) (West 2002)). On September 9, 2003, defendant filed a posttrial motion for a new trial. The court denied the motion and fined defendant $300. This appeal followed.

On appeal, defendant argues that the trial court improperly rejected both his proffered nonpattern jury instructions and his verdict forms separating the domestic battery charge into its physical components. We first examine defendant's proffered jury instructions.

■ A nonpattern jury instruction should be used if a pattern instruction does not contain an accurate instruction on the subject on which the jury should be instructed. *People v. Mata*, 316 Ill. App. 3d 849, 854, 737 N.E.2d 1120, 1125 (2000). Whether to use a specific jury instruction is within the discretion of the trial court. *People v. Simms*, 192 Ill. 2d 348, 412, 736 N.E.2d 1092, 1133 (2000). Whether a court has abused its discretion will depend on whether the nonpattern instruction is an accurate, simple, brief, impartial, and nonargumentative statement of the law. 177 Ill. 2d R. 451(a); *People v. Pollock*, 202 Ill. 2d 189, 211, 780 N.E.2d 669, 682 (2002).

The trial court issued a pattern instruction to the jury defining domestic battery that stated: "A person commits the offense of domestic battery when he knowingly[,] *without legal justification*[,] and by any means causes bodily harm to any family or household member." (Emphasis added.) Illinois Pattern Jury Instructions, Criminal, No. 11.11 (4th ed. 2000) (hereinafter IPI Criminal 4th). The committee note following the quoted instruction explains, "[u]se the phrase 'without legal justification' whenever an instruction is to be given on an affirmative defense contained in [a]rticle 7 of [c]hapter 720." IPI Criminal 4th No. 11.11, Committee Note, at 456. Article 7 of chapter 720 sets forth 13 affirmative defenses to the use of force, including the "use of force in defense of a person" defense that the trial court allowed. 720 ILCS 5/7—1 through 7—14 (West 2002).

Although not a statutory affirmative defense, the common-law rule that parents may take "reasonable steps to discipline their children when necessary" has been previously recognized by this court. *In re F.W.*, 261 Ill. App. 3d 894, 901, 634 N.E.2d 1123, 1128 (1994); see also Restatement (Second) of Torts § 147(1), at 265 (1965) ("A parent is privileged to apply such reasonable force *** upon his child as he reasonably believes to be necessary for its proper control, training, or education"). In *F.W.*, we stated:

" 'Discipline' [has] been interpreted by the courts to extend to *reasonable* corporal punishment. A parent who utilizes corporal punishment exceeding the boundaries of reasonableness may,

depending on the circumstances, be subject to prosecution for \*\*\* domestic battery \*\*\*." (Emphasis in original.) *F.W.*, 261 Ill. App. 3d at 898, 634 N.E.2d at 1126.

In addition, the domestic battery statute refers to the definitions found in "subsection (3) of section 112A—3 of the Code of Criminal Procedure of 1963." 720 ILCS 5/12—3.2(a)(1) (West 2002) (referring to 725 ILCS 5/112A—3(3) (West 2002)). Subsection (1) of section 112A—3 defines "abuse" to "not include reasonable direction of a minor child by a parent or person in loco parentis." 725 ILCS 112A—3(1) (West 2002).

The State cites *People v. Walters*, 211 Ill. App. 3d 102, 570 N.E.2d 6 (1991), in support of its contention that even if parental discipline is a legal justification for defendant's actions, defendant's proffered instructions were not impartial or free from argument and were properly rejected. In *Walters*, the defendant struck his 8-year-old son on the buttocks 20 or 30 times with a stick after the child had wet his bed. *Walters*, 211 Ill. App. 3d at 104, 570 N.E.2d at 6. At his trial for aggravated battery, the defendant submitted a nonpattern jury instruction that read " '[p]arents have a legal right to spank their children.' " *Walters*, 211 Ill. App. 3d at 104, 570 N.E.2d at 7. The trial court refused the instruction on the grounds that it was argumentative because it was too unclear about what the term "spank" encompassed, " 'what a parent can spank with, how long, [and] what injuries, if any.' " *Walters*, 211 Ill. App. 3d at 105, 570 N.E.2d at 7. We upheld the trial court's ruling, stating that the tendered instruction was not " 'impartial and free from argument.' " *Walters*, 211 Ill. App. 3d at 105, 570 N.E.2d at 7, quoting *People v. Pankey*, 58 Ill. App. 3d 924, 927, 374 N.E.2d 1114, 1116 (1978).

■ We find the present case to be distinguishable from *Walters*. Unlike in *Walters*, here, defendant's instructions did not contain a blanket statement about parental discipline that could potentially confuse the jury as to what amount of force in disciplining a child is acceptable. Both of defendant's tendered instructions used the qualifier "reasonably" in describing the amount of force or discipline that is acceptable. In *People v. Ball*, 58 Ill. 2d 36, 39, 317 N.E.2d 54, 56 (1974), the supreme court stated:

> "This court recognized in *Fletcher v. People* (1869), 52 Ill. 395, 397, that a parent's disciplinary authority over his children 'must be exercised within the bounds of reason and humanity.' Subsequent appellate court decisions have reiterated the view that parental rights of discipline are limited by a standard of reasonableness."

The Illinois Domestic Violence Act of 1986 defines "abuse" to include physical abuse, harassment, or intimidation of a child but does not

include reasonable direction of a child by a parent. 750 ILCS 60/103(1) (West 2002); see *Radke v. Radke*, 349 Ill. App. 3d 264, 267 (2004). Reasonableness is the proper standard for the jury to apply in determining whether the parental discipline is justified. *People v. Walker*, 130 Ill. App. 3d 58, 60, 473 N.E.2d 995, 997 (1985) ("In matters of discipline *** a standard of reasonableness has been applied to determine whether a parent's conduct towards his child was legally justified and authorized by law"). We do not find persuasive the State's further argument that "reasonable" is not defined in defendant's proposed instruction. What force is reasonable and what exceeds reasonable force are proper questions.

Further, the instructions given to the jury at the trial, when taken as a whole, did not fully and fairly define the applicable law. The jury was instructed that "a person commits the offense of domestic battery when he knowingly, without legal justification, and by any means causes bodily harm to any family or household member." The jury was not instructed that a parent is legally justified in the use of reasonable force in disciplining his child. See *Ball*, 58 Ill. 2d at 39, 317 N.E.2d at 56. Defendant tendered two alternative instructions that would have defined this justification for the jury. Defendant's No. 5 stated: "A parent is legally justified in using reasonable force when necessary as part of reasonable discipline of a child." This instruction is an accurate, simple, brief, impartial, and nonargumentative statement of the law. The trial court should have allowed this instruction or one with similar language, and it was error to refuse it.

■ Defendant also contends that the trial court erred in refusing to provide separate verdict forms to the jury for each of the two acts alleged in the information, pulling T.S.R.'s hair and striking T.S.R.'s face. The trial court issued one set of verdict forms that allowed the jury to find defendant either guilty or not guilty on the sole count of domestic battery. Defendant argues that without separating the acts alleged in the information, the jury may not have reached a unanimous verdict, with some jurors finding him guilty for pulling T.S.R.'s hair, and some jurors finding him guilty for striking her in the face. Defendant notes that the jury sent a question to the judge during deliberations asking, "Can you give us a definition of bodily harm and is pulling hair considered bodily harm?" Defendant states that this question suggests that the jury may have believed that defendant did not strike T.S.R. in the face, but without an instruction on parental discipline, may have found him guilty of domestic battery solely on the grounds that he pulled her hair.

We apply an abuse-of-discretion standard when reviewing a trial court's decisions relating to verdict forms. *Gold v. Ziff Communica-*

*tions Co.*, 322 Ill. App. 3d 32, 45, 748 N.E.2d 198, 207 (2001). In a criminal trial, a jury is required to return a general verdict as to each offense charged. 725 ILCS 5/115—4(j) (West 2002). In *People v. Travis*, 170 Ill. App. 3d 873, 890, 525 N.E.2d 1137, 1147 (1988), we stated:

> "[T]he jury need only be unanimous with respect to the ultimate question of defendant's guilt or innocence of the crime charged, and unanimity is not required concerning alternate ways in which the crime can be committed \*\*\*."

Because defendant was only charged with a single count of domestic battery, the trial court properly submitted only a single set of verdict forms to the jury. It is irrelevant whether the jurors believed that the hair-pulling caused the bodily harm or whether they thought the harm was a result of defendant striking T.S.R. in the face. "All that is necessary is that the jury is unanimous that he is guilty of the offense, regardless of their agreement on the underlying conduct." *Travis*, 170 Ill. App. 3d at 892, 525 N.E.2d at 1148. The trial court was within its discretion when it refused to issue separate verdict forms for each act alleged in the information.

For the foregoing reasons, the trial court's judgment is reversed and remanded so that the jury may be instructed on the parental discipline justification.

Reversed.

STEIGMANN, J., concurs.

JUSTICE MYERSCOUGH, dissenting:

I do not agree the trial court abused its discretion by refusing defendant's nonpattern instructions.

A trial court may properly refuse a defendant's instruction when no evidence supports his theory. *People v. Dunlap*, 315 Ill. App. 3d 1017, 1024, 734 N.E.2d 973, 981 (2000). While defendant advanced multiple theories throughout trial, *i.e.*, the victim's injuries were self-inflicted and defendant was attempting to come to the aid of his wife, he eventually argued that his conduct was justified as reasonable discipline. Defendant's admitted conduct of grabbing the victim by the hair, pushing her to the floor, and dragging her three feet clearly exceeded the limits of reasonable parental discipline. Defendant's own testimony therefore rendered instruction No. 5 inapplicable and unsupported by the evidence.

Additional evidence adduced during defendant's trial failed to support defendant's theory of reasonable discipline. Chris Miller, the victim's boyfriend at the time of the battery, testified that T.S.R. called

him at approximately 9:30 p.m. on February 25, 2003, following the altercation with her parents. Chris testified that while he talked to T.S.R., he could hear defendant "yelling" in the background. Chris called his mother, Kathy Miller, and connected her to the call, creating a three-way conference call. Chris continued to hear defendant in the background while he and his mother talked to T.S.R. Chris testified he heard defendant call T.S.R. a liar and say "its not like [Chris's] mom never hits her kids." Kathy Miller testified her son, Chris, called her while she was on duty as a registered nurse. Kathy testified T.S.R. was "hysterical" during the three-way conversation and was "sobbing pretty hard." Kathy also testified to hearing defendant's "angry" and "frustrated" voice in the background. When asked if she heard defendant say anything while she was talking to Chris and T.S.R., Kathy testified, "I heard \*\*\* a comment that I hit my kids, too. \*\*\* And then I heard \*\*\* [']I didn't hit you that hard.['] " Kathy ended her conversation with Chris and T.S.R. She testified, "I didn't need to hear any more, I felt it was a volatile situation[,] and I was hanging up and calling the county sheriff."

Sergeant Tim Collins of the De Witt County sheriff's department responded to the call. He testified that he spoke to T.S.R. upon arriving at the Robertses' home. Collins testified that T.S.R. looked "very upset. She had been crying and she had a large bruise around her left eye." During Collins's testimony, the State introduced a photo of T.S.R. taken after the altercation. Collins confirmed that the photo fairly and accurately portrayed the condition of T.S.R.'s bruised and swollen face as it looked when he arrived at the Robertses' home. The photo, People's exhibit No. 1, shows discoloration under both of T.S.R.'s eyes and a large, swollen bruise under her left eye.

In light of defendant's testimony and this additional evidence, the court correctly refused to give defendant's instruction No. 5. While this court may have recognized the use of reasonable discipline, it did not sanction striking a child in the face, grabbing her by her hair, pushing her to the floor, and dragging her. This court recognized spanking in limited form. Swatting a young child on the behind cannot be equated to hitting and grabbing a 16-year-old young woman by the hair and dragging her three feet. Defendant's use of force was clearly unreasonable. Defendant's instruction No. 5 was unsupported by the evidence and was, therefore, correctly refused.

Defendant's instruction No. 6 was also correctly refused because it inaccurately states the law. The majority explains a nonpattern instruction may be used if no instruction exists or if the existing instructions do not accurately state the law. See *Mata*, 316 Ill. App. 3d at 854, 737 N.E.2d at 1125. However, the proposed nonpattern instruc-

tion must also accurately state the law. 177 Ill. 2d R. 451(a); *Pollock*, 202 Ill. 2d at 211, 780 N.E.2d at 682. Our court has recognized a parental right to reasonable discipline. *F.W.*, 261 Ill. App. 3d at 901, 634 N.E.2d at 1128. Defendant's instruction No. 6 stated that a parent is justified in using force "when and to the extent that *he reasonably believes* such conduct is necessary for the proper and necessary discipline of his child." (Emphasis added.) This instruction applies a subjective standard to the administration of corporal punishment by instructing the jury to consider the parent's belief as to the reasonableness and necessity of discipline. No cases exist, including those defendant cited in support of this instruction (*Walters*, 211 Ill. App. 3d 102, 570 N.E.2d 6; *People v. Parris*, 130 Ill. App. 2d 933, 267 N.E.2d 39 (1971); *Ball*, 58 Ill. 2d 36, 317 N.E.2d 54), that support defendant's claim that the "reasonable belief" of a parent that his use of force is necessary is a defense.

Further, this court, in *Walters*, 211 Ill. App. 3d at 105, 570 N.E.2d at 7, found that even where a jury instruction accurately states the parental right to reasonable discipline, it may be refused if it is misleading or argumentative. Here, similarly, the trial court agreed defendant's nonpattern instructions were simple and brief, but it found they were not impartial and were argumentative. See 177 Ill. 2d R. 451(a). In light of the foregoing, I do not agree the court abused its discretion by refusing to give defendant's nonpattern instructions. For these reasons, I would affirm the trial court.