Teresa Michelle DICK *v.* STATE of Arkansas

CR 04-1391 217 S.W.3d 778

Supreme Court of Arkansas
Opinion delivered November 17, 2005

134

*Seth Irwin, P.A.*, by: *Seth Irwin*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Laura Shue*, Ass't Att'y Gen., for appellee.

JIM HANNAH, Chief Justice. Teresa Michelle Dick appeals her conviction for first-degree false imprisonment alleging that there is insufficient evidence to prove that she restrained her daughter without consent and lawful authority. Specifically, she argues that her conviction cannot stand because a parent cannot be criminally liable for restraining his or her child. We disagree and affirm.

## Standard of Review

Dick asserts a single issue on appeal, that the circuit court erred in denying her motion for a directed verdict on the false-imprisonment charge. We treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Parker v. State*, 355 Ark. 639, 144 S.W.3d 270 (2004). In reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *Id.* We affirm a conviction if substantial evidence exists to support it. *Id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.*

## Facts

Late in the evening on November 9, 2003, the home of Lloyd Holt and Teresa Dick burned. The home was already burned to the ground by the time firefighters arrived. Brian Williams and another firefighter got a flashlight and looked at the debris. Williams thought that he saw a skull under a bed frame. After cooling the area down so they could make their way further in, the firefighters found a skeleton and a chain. Williams called in the sheriffs' department. Chief Deputy Jerry Dorney testified that he went where directed by Williams and observed a small metal bed frame and the remains of a body partially underneath the bed frame. He also testified that he discovered two padlocks sticking out of the rubble. He further stated that "there were bones before the chain and after the chain," which indicated to him that the leg

was through the chains with the padlocks attached. Dorney characterized the chain as a "dog chain." Forensic anthropologist Elayne Pope testified that the victim was underneath the bed as opposed to being on top because the chain was not draped over the top of the bedframe.

Although the body was virtually consumed by the fire, there was a residue of tissue at the hips that allowed testing of blood. From samples obtained, Dr. Stephan Erickson, the state medical examiner, testified that the primary cause of death was smoke and soot inhalation resulting in high carbon monoxide in the victim's system. He opined that the victim was alive at the time of the fire.

The deceased child was identified by Dick as her ten-year-old daughter Molly. Dick admitted to police that she had chained Molly to the bed. She testified that Molly required supervision twenty-four hours a day, seven days a week. According to Dick, she and Holt sat down and discussed chaining after the use of a rope failed because Molly kept untying it. They decided that a method that stopped her from getting out of her bed was best. Dick also stated that Molly was not put in the bedroom that she and Holt occupied because Molly was older than the other two children and "needed her own space." The key to the lock was kept on top of the refrigerator. Dick testified that Molly was chained after she fell asleep and unchained before she woke up.

Kim Warren, a state special agent assigned to investigate the death, testified that Dick told her that she had chained Molly to her bed to protect her other children. Dick told Warren that she once caught Molly putting a pillow on her "kid's back." Dick testified that she and Holt were scared for the other two children and that Molly was chained every night because they were afraid every night. According to Dick, the behavioral problems with Molly were longstanding and severe. Dick testified that Molly pushed her two-year-old sister off the porch and broke her arm, and that one night she caught Molly trying to suffocate her younger brother. According to Dick, Molly threatened people with knives, and because of this, the knives were moved to the top of the refrigerator. However, Molly would climb up and get the knives, as well as medication that was kept there. Molly was on medication for attention deficit disorder and took sleeping pills.

Molly's special-education teacher, Becky Madewell, testified that Molly tried to stab persons or objects with scissors and pencils. Madewell also recounted that if Molly was not pressed, she

could be well behaved, but that she was easily upset and would throw things. She also had a history at school of kicking and attempting to hurt other students if they did not play with her. Molly's behavior on the bus proved so troublesome that a fabric-restraint vest was used. Steve Ziegler, principal of Clarksville Primary School, testified that Molly hit other children and an instructional aid.

Molly's parents took her out of public school and began home schooling her. Madewell then tried to get the parents to take Molly to Arkansas Children's Hospital to be tested in order to obtain help in controlling her, but according to Madewell, the parents refused. Dick testified that they did get Molly counseling, but stopped because it did not seem to be doing any good.

Dick told police that on the night of the fire, she awoke at about 11:30 because Molly was screaming. She also said that she and Holt tried to get to Molly's bedroom at the front of the house, but it was on fire, and they could not reach her. Dick further stated that Holt went out a window so she could hand the two younger children to him. She got their son Briar to him immediately, but by then their daughter Madelyn was lost in the smoke. She finally found Madelyn and got her out. Dick then escaped through a window, and the family then left to go to a neighbor's house.

John Wood testified that he and his wife were out that night to check on a brush fire that they had been burning. They found Holt, Dick, and a small girl and boy coming up the road. According to Wood, Holt stated that there was "nobody else in the house, that the house was so far gone there was nothing else to do." Wood also testified that Holt told him that the authorities had been called. However, Kim Parrish, the dispatcher for the sheriff's office, testified that no call was received on the fire until 12:30 a.m., and that the call was received from a sister-in-law, Nicki Holt. Dick later substantiated that Nicki first called the authorities. Dick and Holt were delivered to her house by Wood.

Dorney testified that after the fire it was found that Molly's bed was sitting off-center in the room and that a space heater was next to the bed. Bill Glover, the state's arson investigator, testified that the fire started in the vicinity of Molly's bedroom and the living room; however, the exact location could not be determined. Dick testified that there were four windows in Molly's bedroom, but that she had broken the glass out of three windows previously by throwing toys. Dick stated that one window was boarded up,

one was covered with a tarp, and the third window was covered in heavy plastic. Dick told Warren that she had thought about a fire breaking out, and that Molly had put a piece of paper in the space heater the night before; however, she stated that this occurred while Molly was awake and unrestrained.

Evidence was introduced showing that the restraint of Molly was longstanding. Christina Holt, Dick's former sister-in-law, testified that she had been to Dick and Holt's prior home before the birth of the second and third children. According to Christina, on one occasion, Molly was locked alone in the house, and on another occasion she noticed a padlock on Molly's bedroom door. Mitchell Holt, brother to Lloyd Holt, and former husband of Christina Holt, testified that Christina had only been to the home once and that Molly was with Holt and Dick working in the chicken houses on that occasion. He also testified that he moved into the house when Lloyd and Dick moved out, and at that time, he saw no marks or anything to indicate a lock had been on a bedroom door. However, after Molly's death, deputy Dorney went to the home and found marks from where a hasp had been attached to the bedroom door.

The issue is whether there was substantial evidence to support the jury's verdict that Molly was restrained without consent and without lawful authority. Dick's argument is "that there was never any restraint employed without consent by the person with the lawful authority to do so." Dick thus argues that a parent may not be criminally liable for false imprisonment because a parent has the lawful authority to consent to the restraint of his or her child. Under Ark. Code Ann. § 5-11-103(a) (Repl. 1997), "[a] person commits the offense of false imprisonment in the first degree if, without consent and without lawful authority, he knowingly restrains another person so as to interfere substantially with his liberty in a manner that exposes that person to a substantial risk of serious physical injury."

Dick moved for a directed verdict, arguing that there was insufficient evidence because the parents consented and were the only ones who could consent to the restraint of Molly. The motion was denied. Dick next moved for a directed verdict, arguing that the parents had the lawful authority to restrain Molly. The State argued that Dick was asserting justification under Ark. Code Ann. § 5-2-605(1) (Repl. 1997):

> A parent, teacher, guardian, or other person entrusted with care and supervision of a minor or an incompetent person may use reason-

able and appropriate physical force upon the minor or incompetent person when and to the extent reasonably necessary to maintain discipline or to promote the welfare of the minor or incompetent person.

The court agreed with the State and denied the motion. Dick's second directed-verdict motion, presented after the State's rebuttal evidence, was based on the same grounds and again denied.

### Consent and Lawful Authority

■ Dick asserts that in chaining Molly to her bed, she was only exercising her right and obligation as a parent to control and protect her children. Parental rights are in the nature of a trust subject to their duty to care for and protect the child, and the law secures those parental rights only so long as parents discharge their obligations. *Pender v. McKee*, 266 Ark. 18, 582 S.W.2d 929 (1979). Further, while a parent has wide discretion and a duty under the law to rear and discipline his or her child, the discretion to discipline does not exceed the limits of reasonable parental care. *See Attwood v. Estate of Attwood*, 276 Ark. 230, 633 S.W.2d 366 (1982). Parental rights are not beyond limitation in the public interest. *McFarland v. McFarland*, 318 Ark. 446, 885 S.W.2d 897 (1994) (quoting *Davis v. Smith*, 266 Ark. 112, 583 S.W.2d 37 (1979)). The State's constitutional interest extends to the welfare of the child, and parental rights are not immune from interference by the State in its role of parens patriae. *Id.*

■ A parent "may use reasonable and appropriate physical force upon the minor . . . when and to the extent reasonably necessary to maintain discipline or to promote the welfare of the minor. . . ." Ark. Code Ann. § 5-2-605(1). However, obviously, a parent may not use his or her parental authority to commit a crime upon his or her own child. *See, e.g., Demontigney v. State*, 593 N.E.2d 1270 (Ind. Ct. App. 1992) (parent convicted for chaining six-year-old son to his bed and leaving him for long periods of time without food and water to defecate and urinate on himself); *State v. Brown*, 792 S.W.2d 3 (Mo. Ct. App. 1990) (live-in boyfriend convicted of criminal confinement and torture of seven-year-old boy who was banished to furnace room in the basement, chained to a rusty bed frame, and physically abused under the guise of discipline); *State v. Artis*, 46 Ohio App. 3d 25, 545 N.E.2d 925 (1989) (father convicted of child endangerment for binding his

daughter, tying her to a beam, stuffing a sock in her mouth, and beating her with a paddle under the guise of discipline); *Nebgen v. State*, 47 Ohio App. 431, 192 N.E. 130 (1933) (man with custody of seven-year-old boy convicted for chaining the boy to a bathtub in his absence and for failure to properly feed and clothe the boy).

 "Parents can be guilty of unlawful imprisonment of their own children in circumstances where the restrictions on the children's movements, viewed objectively, are excessive, immoderate, or unreasonable." *State v. Kinchen*, 92 Wash. App. 442, 444, 963 P.2d 928 (1998). When a person restrains his or her own child for an unlawful purpose, he or she divests him or herself of any parental immunity. *People v. Checketts*, 71 Cal. App. 4th 1190, 84 Cal. Rptr. 2d 491 (1999). The majority rule is that a parent may lawfully exercise reasonable control and discipline of his or her own child. *See State v. Washington*, 166 Vt. 600, 691 A.2d 583 (1997); *State v. Bruce*, 132 N.H. 465, 566 A.2d 1144 (1989); *People v. Walker*, 130 Ill. App.3d 58, 473 N.E.2d 995 (1985). Our own cases are consistent with this rule. *Attwood, supra; McFarland, supra.* Our statutes are consistent with this rule. Ark. Code Ann. § 5-2-605. There is no merit to Dick's argument on appeal that as a parent she could not be held liable for criminal conduct committed against Molly because she had the lawful authority to consent to restraint of her child. There was substantial evidence to support the jury's finding that Dick committed the crime of false imprisonment by exercising excessive and unreasonable restraint that created a substantial risk of serious physical injury.

Affirmed.

CORBIN and IMBER, JJ., dissent.

ANNABELLE CLINTON IMBER, Justice, dissenting. As a primary source of authority, the majority repeatedly cites Ark. Code Ann. § 5-2-605(1) (Repl. 1997). Yet, as also noted by the majority, section 5-2-605(1) is a justification statute. As such, the legislature did not intend that the statute be used to lessen or mitigate the State's burden to prove the elements of false imprisonment. Because that is precisely what the majority has done in this opinion, I must respectfully dissent.

The central question in this case is one of statutory interpretation. We construe criminal statutes strictly, resolving any doubts in favor of the defendant. *Harness v. State*, 352 Ark. 335, 101

S.W.3d 235 (2003); *Short v. State*, 349 Ark. 492, 79 S.W.3d 313 (2002). We construe a statute just as it reads, giving the words their ordinary and usually accepted meaning in common language, and if the language of the statute is plain and unambiguous, and conveys a clear and definite meaning, there is no occasion to resort to rules of statutory interpretation. *Harness v. State, supra.*

The plain language of the false-imprisonment statute requires that the State prove the elements of "without consent" and "without lawful authority." Ark. Code Ann. § 5-11-103 (Repl. 1997). No person may be convicted of an offense unless the State proves each element of the offense beyond a reasonable doubt. Ark. Code Ann. § 5-1-111(a)(1) (Repl. 1997). In the context of a child under the age of fourteen years old, the element of "without consent" requires that the State prove that the restraint was without the consent of a parent, guardian or other person responsible for the general supervision of the welfare of the child. Ark. Code Ann. § 5-11-101(2) (Repl. 1997). In its opinion, the majority has imposed a reasonableness inquiry unfounded by the language of the statute, thereby obliterating the requirement that the State prove the "without consent" element. In support of its interpretive gymnastics, the majority looks to Ark. Code Ann. § 5-2-605(1):

> The use upon another person of physical force that would otherwise constitute an offense is justifiable under any of the following circumstances:
>
> (1) A parent, teacher, guardian, or other person entrusted with care and supervision of a minor or an incompetent person may use reasonable and appropriate physical force upon the minor or incompetent person when and to the extent reasonably necessary to maintain discipline or to promote the welfare of the minor or incompetent person.

Ark. Code Ann. § 5-2-605(1) (Repl. 1997). This statute, however, is a *justification* statute, and is intended to be used by the parents or guardians to justify their actions *after* the State has met its burden of proof. Justification statutes are not meant to "water down" the elements of a crime to allow the State to circumvent its burden of proving each element of the offense beyond a reasonable doubt.

Moreover, in other statutes concerning the treatment of children by their parents, the legislature has explicitly imposed a reasonableness inquiry in the language of the statute. Arkansas

Code Annotated § 12-12-503(2)(C)(I) (Supp. 2005) states, " 'Abuse' shall not include physical discipline of a child when it is *reasonable* and *moderate* and is inflicted by a parent or guardian for purposes of restraining or correcting the child." Ark. Code Ann. § 12-12-503(2)(C)(I) (Supp. 2005) (emphasis added). Similarly, section 12-12-503(2)(B)(ii) states, "No *unreasonable* action shall be construed to permit a finding of abuse without having established the elements of abuse." Ark. Code Ann. § 12-12-503(2)(B)(ii) (Supp. 2005) (emphasis added). "Neglect" can be found if the parent or guardian "[fails] to take *reasonable* action to protect the juvenile from abandonment, abuse, sexual abuse, sexual exploitation, neglect, or parental unfitness where the existence of this condition was known or should have been known." Ark. Code Ann. § 9-27-303(36)(A)(iii) (Supp. 2005) (emphasis added). Thus, it can be argued with considerable force that in drafting the false-imprisonment statute, Ark. Code Ann. § 5-11-103, the legislature deliberately chose not to impose a reasonableness inquiry. *See Hales v. State*, 299 Ark. 93, 771 S.W.2d 285 (1989).

In other words, if the legislature had intended to include an inquiry into the reasonableness of the parent's consent for purposes of false imprisonment, it could have expressly provided for that inquiry in the language of the statute. No such language is included. We have repeatedly held there is no better settled rule in criminal jurisprudence than the rule that criminal statutes must be strictly construed and pursued. *Heikkila v. State*, 352 Ark. 87, 98 S.W.3d 805 (2003); *Smith v. State*, 352 Ark. 92, 98 S.W.3d 433 (2003). The courts cannot, and should not, by construction or intendment, create offenses under statutes which are not in express terms created by the legislature. *Heikkila v. State, supra; Smith v. State, supra; Williams v. State*, 347 Ark. 728, 67 S.W.3d 548 (2002). We are without authority to declare an act to come within the criminal laws of this state by implication. *Heikkila v. State, supra; Smith v. State, supra; Dowell v. State*, 283 Ark. 161, 671 S.W.2d 740 (1984). It would violate the accepted canons of interpretation to declare an act to come within the criminal laws of the State merely by implication. *Heikkila v. State, supra; Smith v. State, supra.* Nothing is taken as intended which is not clearly expressed. *Heikkila v. State, supra; Smith v. State, supra.* Despite these established tenets of statutory construction, the majority in this case has created a new offense by its implication of a reasonableness inquiry instead of construing the plain and unambiguous phrase "without consent and without lawful authority" just as it reads. We must not forget that "[i]t is not the business of the courts to legislate, and if a

change in the law in this respect is desired, the General Assembly is the branch of government whence change must come." *Southern Telephone Co. v. King*, 103 Ark. 160, 146 S.W. 489 (1912).

Finally, the majority fails to mention that Ms. Dick was also convicted of manslaughter for the death of Molly and sentenced to seven years in prison. That conviction has not been appealed and therefore will not be disturbed.

For the above-stated reasons, I respectfully dissent.

CORBIN, J., joins this dissent.