**Electronically Filed
Supreme Court
SCWC-22-0000499
28-JUN-2024
09:28 AM
Dkt. 21 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I,
Petitioner/Plaintiff-Appellee,

vs.

ALEXANDER AQUINO,
Respondent/Defendant-Appellant.

SCWC-22-0000499

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-22-0000499; CASE NO. 3CPC-21-0000757)

JUNE 28, 2024

RECKTENWALD, C.J., McKENNA, EDDINS, AND DEVENS, JJ., AND
CIRCUIT JUDGE SOMERVILLE, IN PLACE OF GINOZA, J., RECUSED

OPINION OF THE COURT BY EDDINS, J.

**I.**

The Office of the Prosecuting Attorney County of Hawai'i (State) alleged that Alexander Aquino wrapped a chain around his minor stepson's neck and chained him nightly for over a year to the family's elevated outside porch. By information, it charged

Aquino as a principal or accomplice with unlawful imprisonment in the first degree, Hawai'i Revised Statutes (HRS) § 707-721(1)(a) (2014).

In a jury-waived trial, the Circuit Court of the Third Circuit convicted Aquino.

The Intermediate Court of Appeals vacated the conviction and remanded for a dismissal with prejudice. Because the charging document omitted a definition of "restrain" relating to consent – an attendant circumstances element, in its view - the ICA ruled that the information was defective. The ICA also held that the State failed to present sufficient evidence that Aquino restrained the minor and knowingly subjected him to the risk of serious bodily injury.

We hold that the information contained the elements of the charged offense and satisfactorily described the nature and cause of the accusation. We also hold that the State presented sufficient evidence to convict Aquino.

**II.**

In September 2021, the State charged Alexander Aquino (Aquino) by information with unlawful imprisonment in the first degree, HRS § 707-721(1)(a). The charge reads:

> On or about the August 1, 2020 through August 21, 2021, in Kona, County and State of Hawai'i, ALEXANDER AQUINO, as a principle [sic] or accomplice, knowingly restrained another person, L.R., a minor born in June of 2007, under circumstances which exposed L.R. to the risk of serious bodily injury, thereby committing the offense of Unlawful

2

Imprisonment in the First Degree, in violation of Section 707-721(1)(a), Hawai'i Revised Statutes, as amended.

In a separate information, the State charged Amy Aquino, L.R.'s biological mother and Aquino's wife, with the same crime; also as a "principle [sic] or accomplice." Aquino is L.R.'s stepfather and L.R. calls him "dad." The cases were not consolidated. Per a plea agreement, Amy Aquino pled no contest to unlawful imprisonment in the first degree.

Before trial, Aquino moved to dismiss for "failure to charge offense." He argued that the information omitted an element of unlawful imprisonment in the first degree. Since L.R. was under eighteen years old, Aquino believed the charging document needed to embed consent language from HRS § 707-700's definition of "restrain." Aquino says the State should've told him that it had to prove the absence of "consent of the relative, parent, or institution having lawful custody" of the person.

Circuit Court Judge Wendy DeWeese denied Aquino's motion.

Fourteen year old L.R. testified at the trial. During the charged crime's time frame, he lived with his mom and stepfather. At night L.R. slept outside on an elevated back porch. (The record uses porch and lanai interchangeably.) There were no stairs. At 17 feet high, the porch stood nearly two stories off the ground. The only way off it - aside from

3

going into the house, something L.R. wasn't allowed to do without permission - was to climb over a railing and scale down the home's poles.  If L.R. entered the house without asking, Aquino would yell at him and his mother.  Sometimes Aquino slapped L.R. to keep him in line.  Other times, Aquino hit him with a two-by-four.

At night, L.R. recounted, Aquino and his mother would chain him up; it was Aquino's idea.  They wrapped a 12-16 inch metal chain around his neck and locked it with a padlock.  The chain connected to a ring on the porch's floor.  At first, Aquino or L.R's mother leashed him.  Later, they made him self-restrain.  So he often looped the chain around his neck and locked himself up.  When he was restrained, L.R. only had about 6 or 7 inches of movement.  He could not sit up.  L.R. slept on a towel on top of a plastic bag.  He was allowed a comforter blanket, but no pillow.  Aquino or L.R.'s mother kept the padlock's key.

Sleeping on the porch while chained started as early as 2017, when L.R. was 10 years old.  L.R. told Aquino and his mother that he did not like being chained up.  He recalled how Aquino and his mother made sure he spent the nights locked up.  Other than his birthday, when they allowed him to sleep in the house, L.R. slept outside with the chain around his neck.

L.R. tried to run away in 2020.  But as he climbed down the porch, he slipped.  The fall fractured his back.  He said he

4

almost broke his neck.  L.R. couldn't stand for a couple of days and experienced long-lasting back pain.  Yet, he received no medical treatment.  Neither his mother nor Aquino took him to a doctor.  Since L.R. was in so much pain, at first, the Aquinos didn't chain him.  But about a month later, they resumed chaining L.R. by the neck on the porch.

In August 2021, L.R. fled.  That night, L.R. put the chain around his neck, but he only pretended to close the lock.  While his mom slept and Aquino was at work, L.R. climbed over the lanai's railing and down the poles.  He hitched a ride into Kailua-Kona town and came into contact with a woman who worked for Child & Family Service.  Upon hearing about his maltreatment, she called the Child & Family Service crisis line.  Soon the police arrived and initiated an investigation.  Two days later, the Aquinos were arrested and charged.

The State also called L.R.'s maternal grandmother.  Aquino had told her that "they" (meaning her daughter too) chained L.R. up when they left the house.  Neither wanted him to "escape."  The grandmother described her grandson's gait.  He walked "crooked" and "hunched."  And his normal movements were labored, such that he required many breaks on a simple ten minute walk.

A county detective testified.  The detective discussed his interview with L.R.  L.R. was "visibly trembly," and walked "hunched over" and "like an old man."  L.R.'s gait was

"consistent with someone who has back issues or something like that," and "both legs weren't making the same motion."  The detective said L.R. "was walking very, very obviously abnormal."  He authenticated a photo taken of L.R.'s discolored neck.

The State also called a medical doctor.  Qualified as an expert, the doctor said that he had treated L.R. from August – December 2021.  The doctor testified that L.R. and his aunt came to his office for a wellness check.  L.R. appeared "very nervous" and told the doctor that he had back pain from falling off a balcony the year before.  After that, he had trouble walking long distances.  The doctor observed a "large bony bump" and a "softer bump" on L.R.'s back.  X-rays showed a "compression fracture of his third lumbar."  The doctor said spinal injuries exceeded his area of expertise, so he referred L.R. to an orthopedic doctor.

The defense did not present a case.

Judge DeWeese found Aquino guilty of unlawful imprisonment in the first degree.

The circuit court made extensive findings of fact and conclusions of law.  It found that L.R. credibly testified.  The chaining was Aquino's idea and occurred for years.  The court pointed to L.R.'s testimony that "he was being chained up and padlocked at the time of his fall from the lanai in 2020 and that thereafter he was consistently being chained up by

6

Defendant and/or his mother."  The court found that Aquino would decide whether or not to let L.R. into the house to use the bathroom, and that Aquino and L.R.'s mother controlled the padlock's key.  The court concluded there was proof beyond a reasonable doubt that Aquino "as a principal, or accomplice, knowingly restrained L.R. between August 1, 2020 and August 21, 2021."

Next, the court framed the case's key trial issue: "[t]he main issue in the case is whether the chaining of L.R. exposed L.R. to the risk of serious bodily injury and whether Defendant knew this."  The court spotlighted the failed escape when L.R. fell and broke his back.  Aquino "clearly knew" about the event and the resulting injury.  The court observed that it happened while he restrained L.R. daily.  Aquino knew L.R. might try to flee again and could be seriously injured if he continued to chain him.  Thus, the court concluded: "The credible evidence shows beyond a reasonable [doubt] Defendant knew that he was exposing L.R. to the risk of serious bodily injury when he continued to restrain L.R. on the lanai between August 1, 2020 and August 21, 2021."

Aquino appealed.

In a summary disposition order, the ICA sided with Aquino.

The ICA ruled that the information overlooked an element.  That element, the ICA said, requires the absence of consent.

7

Per the ICA, an attendant circumstance element surfaces when the victim of restraint is under eighteen years old. HRS § 707-700 (2014) defines "restrain" and says that the restraint must be "without the consent of the relative, person, or institution having lawful custody of the person." Because "[t]his attendant circumstances element was not set forth in Aquino's charge," the ICA held that the information's unlawful imprisonment in the first degree charge was defective.

Regarding the State's evidence, the ICA again agreed with Aquino. "[T]he record does not contain sufficient evidence to support Aquino's Unlawful Imprisonment conviction." The ICA believed that five findings of fact were unsupported and therefore clearly erroneous. It did not find a causal link between the chaining and the risk of serious bodily injury. Because L.R.'s fall and back injury didn't happen while L.R. was actually chained, there was no risk of serious bodily injury. The ICA pointed to the chain's short length – it did not extend to the porch's end. "L.R. did not, indeed could not (because of the length of the chain and its location on the porch), have climbed down from the porch while chained." Therefore, "[t]he record evidence does not support a reasonable and rational inference that Aquino's act of chaining L.R. was 'under circumstances' that 'exposed' L.R. to 'the risk of serious bodily injury.'"

The ICA vacated the circuit court's judgment of conviction and sentence. It remanded the case to the third circuit for dismissal with prejudice.

The State applied for cert, and we accepted.

**III.**

First, we examine the charging document challenge. We hold that the information provided sufficient notice to Aquino. It did not need to define "restrain" to allege that Aquino acted without the consent of L.R.'s lawful custodian (that is, Aquino himself or his separately-charged wife). There was no attendant circumstances element here.

Then we discuss the sufficiency of the evidence to convict Aquino of unlawful imprisonment in the first degree. We hold that the evidence supports a finding that Aquino knowingly restrained L.R. by force or threat and knowingly exposed L.R. to the risk of serious bodily injury.

The conviction stands.

**A.    The charging document**

A charging document's purpose is "to safeguard an accused's fundamental right to know what they must defend against to avoid conviction." State v. Van Blyenburg, 152 Hawai'i 66, 74, 520 P.3d 264, 272 (2022). A defendant has a constitutional right to present a complete defense. State v. David, 149 Hawai'i 469, 481, 494 P.3d 1202, 1214 (2021). To prepare and present a

9

defense, an accused must be informed of the "nature and cause" of the charge and each element.  See State v. Garcia, 152 Hawai'i 3, 6, 518 P.3d 1153, 1156 (2022).

Article I, sections 5 and 14 of the Hawai'i Constitution "inspire the criteria we use to measure the adequacy of a charge: charging documents must include the elements of an offense and sufficiently describe the nature and cause of the accusation."  Id.

The County of Hawai'i charged Aquino as a principal or accomplice with unlawful imprisonment in the first degree:

> On or about the August 1, 2020 through August 21, 2021, in Kona, County and State of Hawai'i, ALEXANDER AQUINO, as a principle [sic] or accomplice, knowingly restrained another person, L.R., a minor born in June of 2007, under circumstances which exposed L.R. to the risk of serious bodily injury, thereby committing the offense of Unlawful Imprisonment in the First Degree, in violation of Section 707-721(1)(a), Hawai'i Revised Statutes, as amended.

Aquino maintains that he did not receive proper notice about the meaning of the restrain element.  Since he allegedly restrained a minor, Aquino says the information had to inform him about an absence of consent: "If the person is under the age of eighteen or incompetent, without the consent of the relative, person, or institution having lawful custody of the person." HRS § 707-700.  Aquino insists those words create an element when a putative victim is not an adult.  Because the information omitted those words, Aquino's argument goes, the State overlooked an element, and the charge gets dismissed.

10

The ICA found Aquino's position persuasive.  It concluded that an attendant circumstances element emerges when an offense's conduct element includes "restrain" and the person restrained is a minor:

> If the subject of the restraint is under the age of eighteen (as was L.R. in this case), the statutory definition of "restrain" potentially adds an attendant circumstances element to the offense: "without the consent of the relative, person, or institution having lawful custody of the person."  This attendant circumstances element was not set forth in Aquino's charge.  Accordingly, the charge was insufficient, and should have been dismissed.

(Footnotes omitted.)

We disagree.

Unlawful imprisonment in the first degree is straightforward.  The crime occurs when a "person knowingly restrains another person under circumstances which expose the person to the risk of serious bodily injury."  HRS § 707-721.

Restrain is a conduct element of unlawful imprisonment in the first degree.  Kidnapping and unlawful imprisonment in the second degree, too.  HRS § 707-720 (2014); HRS § 707-722 (2014 & Supp. 2015); State v. Sheffield, 146 Hawai'i 49, 57, 456 P.3d 122, 130 (2020).

HRS § 707-700 defines restrain two separate ways:

> "Restrain" means to restrict a person's movement in such a manner as to interfere substantially with the person's liberty:
>
> (1)  By means of force, threat, or deception; or

11

> (2)   If the person is under the age of eighteen or
> incompetent, without the consent of the relative, person,
> or institution having lawful custody of the person.

Here, the State's information alleged the conduct element. It did not also need to define it.  Further, the statutory definition created no attendant circumstances element.

First, there are alternative ways for the State to prove restrain.  The "or" in HRS § 707-700's definition of "restrain" is disjunctive, not exclusive.  See State v. Kalani, 108 Hawai'i 279, 284, 118 P.3d 1222, 1227 (2005).  Restrain means restricting a person's movement "[b]y means of force, threat or deception; or" if the person is under the age of eighteen, "without the consent of the relative, person, or institution having lawful custody of the person."  HRS § 707-700 (emphasis added).

Oftentimes there are alternative paths to prosecution. Indeed, the ICA recognized that the prosecution may charge a defendant under either HRS § 707-700 definition of restrain. "Where the subject of the alleged restraint is a minor or incompetent, the State can potentially charge the defendant pursuant to either or both definitions of restrain."

Per Aquino and the ICA, for those over 18 years old, restraint requires restriction "by means of force, threat, or deception."  In contrast, for those under 18, restraint must

occur "without the consent of the relative, person, or institution having lawful custody of the person."

We conclude that the consent definition of "restrain" is not automatically invoked when the person being restrained is a minor. HRS § 707-700 does not create two unlawful imprisonment or two kidnapping offenses, one with a no consent attendant circumstances element, one without the added element. Rather, the second definition concerns a person who does not have "lawful custody" of a minor and who may or may not use force, threat, or deception to restrain the minor. On the flip side, a person who acts with the permission of a parent is not guilty of unlawful imprisonment in the first degree unless the person uses force, threat, or deception to restrain the minor and exposes them to the risk of serious bodily injury. See State v. Froland, 936 A.2d 947, 953 (N.J. 2007).

If the accused uses force or threats, like here – and we suspect most prosecuted "restraint" cases – then the person gets charged under that theory.

Other states with nearly identical statutes agree on the "parental consent" definition's purpose. It gives no legal cover to parents or lawful custodians who harm their children. No attendant circumstances element materializes when those adults restrain a minor by using force or threat and expose that child or teen to the risk of serious injury. For instance, New

Hampshire Revised Statutes § 633:2 reads: "The meaning of 'confines another unlawfully' . . . includes but is not limited to confinement accomplished by force, threat or deception or, in the case of a person who is under the age of 16 or incompetent, if it is accomplished without the consent of [their] parent or guardian."  The New Hampshire Supreme Court concluded that "the statute does not provide parents with an unqualified lawful right either to confine their children or to consent that others confine them."  State v. Bruce, 566 A.2d 1144, 1148 (N.H. 1989).

Parents get no free pass to harm their children and expose them to the risk of serious bodily injury, because they have given themselves permission.  HRS § 707-700 does not afford parents (or their accomplices) immunity to unlawfully restrain their children.  The Arkansas Supreme Court found that parents chaining their child to a bedframe with a padlock constituted unlawful imprisonment.  See Dick v. State, 217 S.W.3d 778, 782 (Ark. 2005) ("There is no merit to [defendant's] argument on appeal that as a parent she could not be held liable for criminal conduct committed against [victim] because she had the lawful authority to consent to restraint of her child.").  States that have looked at similar provisions, such as the Revised Code of Washington § 9A.40.010 (which partially defines restraint as restricting a person's movements without consent by "any means including acquiescence of the victim, if [they are] a

14

child less than sixteen years old or an incompetent person and if the parent, guardian, or other person or institution having lawful control or custody of [them] has not acquiesced"), have been clear – parents and other lawful custodians cannot consent to their own unlawful conduct. See State v. Kinchen, 963 P.2d 928, 929 (Wash. Ct. App. 1998) ("Parents can be guilty of unlawful imprisonment of their own children in circumstances where the restrictions on the children's movements, viewed objectively, are excessive, immoderate, or unreasonable."); Bruce, 566 A.2d at 1148 (affirming conviction for parent who unlawfully restrained child by tying them to a ceiling beam); Smith v. State, 703 S.E.2d 629 (Ga. 2010) (defendant was found guilty of unlawful imprisonment when she confined her son to a small room).

Here, in separate cases, the State charged both Aquino and L.R.'s mother with unlawful imprisonment in the first degree. If an age-related attendant circumstances element sprouted from HRS § 707-700, and L.R.'s mother consented to the restraint, then neither she nor Aquino could be lawfully convicted of unlawful imprisonment. (An open factual question that is unnecessary to our holding is whether "stepfather" Aquino was "a person having lawful custody of [L.R.]." If he was, he could not consent to his own unlawful imprisonment of L.R.)

We decline to read HRS § 707-700's second definition of "restrain" as creating an attendant circumstance element that gives some adults immunity because they either consented to their own or to others' unlawful acts. Courts presume the legislature does not intend absurd outcomes, so courts interpret laws to avoid unsound, incongruous, or irrational results. State v. Haugen, 104 Hawai'i 71, 76, 85 P.3d 178, 183 (2004)

We find State v. Johnson, 325 P.3d 135 (Wash. 2014) (en banc) sensible. The Washington Supreme Court validated an information that omitted a statutory definition of "restrain" (one analogous to HRS § 707-700) for an "Unlawful Imprisonment—Domestic Violence" charge. Id. at 137-38. The court reasoned that "the definition of 'restrain' defines and limits the scope of the essential elements . . . [t]hat does not make the definition itself an essential element." Id.

Likewise, HRS § 707-700's definition of "restrain" defines and limits the scope of §§ 707-720, 707-721, and 707-222's conduct element. It is not itself an element. We conclude that "restrain" alone provides sufficient notice to Aquino.

Notice plays the central role in evaluating challenges to an indictment, information, and complaint. Van Blyenburg, 152 Hawai'i at 74, 520 P.3d at 272. We repeat that charging documents are meant to provide notice, "not to facilitate obtuse technical arguments about what is and what is not an element of

16

a crime, or about what complex statutory definitions should or should not be included in a charging document."  Id.

We hold that Aquino received constitutionally-sound notice about the accusation.  He knew what he had to defend against. The County of Hawai'i charged him as a principal or accomplice, tracked the language of unlawful imprisonment in the first degree, and identified the time frame, restrained person, and Hawai'i Penal Code provision.

**B.    The Evidence**

The ICA held there was insufficient evidence to convict Aquino.  Because the ICA believed that several of the trial court's findings of fact were clearly erroneous, it ruled that the trial court's key conclusion - Aquino knowingly exposed L.R. to the risk of serious bodily injury - was unsupported.

The ICA concluded "that FOFs 15, 16, 17, 26, and 27, and Aquino's conviction for Unlawful Imprisonment, are not supported by sufficient evidence."  The ICA vacated these FOFs:

> 15.    The Defendant clearly knew of [L.R.'s] fall and that an injury had resulted.  And, while L.R. testified he does not know why he decided to climb off the porch and that it was a random impulse, the fact remains the escape attempt and fall resulting in injury occurred while L.R. was being chained up by both parents in the same manner as he was between August 1, 2020 and August 21, 2021.
>
> 16.    Also, L.R. testified that he repeatedly told both Defendant and his mother he did not like being chained up. Yet despite this Defendant and [mother] continued to chain up L.R., even after his fall in 2020.
>
> 17.    Thus, the evidence shows Defendant knew the risk of harm associated with continuing to chain up L.R. after the 2020 escape and fall, namely that L.R. might attempt to

17

escape again by climbing off the lanai and hurt himself.

. . . .

26. Further, the Court finds beyond a reasonable doubt that Defendant knew L.R. was exposed to the risk of another fall off of the lanai as had happened in 2020. The circumstances that existed at the time of the 2020 fall continued to exist between August 1, 2020 and August 21, 2021. Defendant was still requiring L.R. to be chained. L.R. was still prohibited from being in the house without Defendant[']s permission. L.R. was still subjected to yelling and discipline by Defendant. The only exit off the lanai still was only through the house, where L.R. was not allowed to be without Defendant[']s permission. L.R. had repeatedly told Defendant he did not like being chained up. And, L.R. had in fact fallen off the lanai while trying to escape once before, resulting in serious bodily injury.

27. The credible evidence shows beyond a reasonable [sic] Defendant knew that he was exposing L.R. to the risk of serious bodily injury when he continued to restrain L.R. on the lanai between August 1, 2020 and August 21, 2021.

To reach its outcome, the ICA found the five FOFs clearly erroneous. But it meaningfully discussed only one, FOF 15, concluding, "L.R. did not, indeed could not (because of the length of the chain and its location on the porch), have climbed down from the porch while chained." This (correct) understanding about the impossibility of escape while chained, prompted the ICA's holding that "[t]he record evidence does not support a reasonable and rational inference that Aquino's act of chaining L.R. was 'under circumstances' that 'exposed' L.R. to 'the risk of serious bodily injury.'"

We conclude that the ICA misunderstood the courtroom events and the trial court's ruling. And it too narrowly approached the expose-to-risk-of-serious-bodily-injury element.

18

First, the ICA appears to read FOF 15 to mean that the trial court thought L.R. was literally chained when he fell and broke his back. But the trial court did not see the evidence that way. The logical, contextual take on FOF 15 is not that Judge DeWeese misjudged the evidence, finding that L.R. fell while *actually* chained. Rather, the court found that L.R. was chained during the *time period* that he tried to escape and fell. The court ruled that L.R.'s fall from the lanai "occurred while L.R. was being chained up by both parents *in the same manner* as he was between August 1, 2020 and August 21, 2021." (Emphasis added.)

The record supports this view. L.R. testified that he was "also being chained up" around the time he fell from the lanai. L.R. said his mom and Aquino briefly "let [him] up" after dinner and that this event preceded his failed escape attempt and injuries. Clearly, L.R. was not chained at the moment he fell from the lanai. As the ICA figured, that was impossible. Instead, the Aquinos regularly chained L.R. during the back-breaking fall's time frame, even earlier that day. FOF 15 is clear. When L.R. fell, the Aquinos were chaining him up "in the same manner as" the August 2020 to August 2021 time frame alleged in the information. The circuit court did not erroneously find that L.R. was chained when he fell. Thus, the ICA's key reason to upset the trial court's fact-finding - "L.R.

19

did not, indeed could not (because of the length of the chain and its location on the porch), have climbed down from the porch while chained" – was unsound.

FOF 13 adds context to the court's finding and countermands the ICA's belief about what the trial court meant by FOF 15. FOF 13 reads: "At the time of L.R.'s fall from the lanai in 2020, L.R. had temporarily been let off the chain for dinner when he tried to climb off the lanai and fell." This finding shows that the circuit court understood the evidence that unfolded before it. The court did not think L.R. was chained at the exact moment he fell from the lanai.

Next, the ICA suggests that the 17-foot fall and the restraint were mutually exclusive. That is, if L.R. was chained, then he couldn't fall. So there was no risk of serious bodily injury. But this misses the overall context of the trial.

L.R. testified that he was chained almost every night since 2017, when he was 10 years old. To instill obedience, L.R. recounted that Aquino would sometimes "whack" him with his hands or even with a two-by-four. His mother and stepfather chained L.R. by the neck to a lanai 17 feet off the ground, about a two-story drop. Aquino forbid him from entering the house. The only way to change his horrific plight was to risk serious bodily injury by climbing down the lanai. And that's what he

did one day.  But L.R. fractured his back.  "I almost broke my neck," he said.  L.R. sustained lingering injuries that have caused him to walk "hunched over" "like an old man" and unable to walk for more than ten minutes without frequently stopping.

The circuit court marched through the evidence and issued 40 findings of fact.  The court found that L.R. credibly testified that the restraint was Aquino's idea.  The court also credited L.R.'s testimony that Aquino and his mother continually chained him up at the time of his 2020 fall.  And it found that L.R. was only allowed into the house if his mom or Aquino said so.  Thus, L.R. had only one way off the elevated lanai to evade his confinement.  And that exposed L.R. to a risk of serious bodily injury.  The 2020 fall merely provided further, concrete evidence to support the reasonable inference that under the circumstances, L.R.'s restraint involved conduct that presented a very dangerous threat to his safety.  (We do not decide whether restraining a person with a chain over a prolonged time period itself exposes that person to a risk of serious bodily injury.)

We stress that the method of restraint does not have to be the source of danger.  Most restraints are by definition restrictive.  We believe that restraining someone under circumstances where the only path to escape involves a dangerous endeavor may create a risk of serious bodily injury.  The

21

situation that produces the risk matters, not just the method of restraint.  The Wyoming Supreme Court rejected an argument "that the mechanism of the restraint *must* also be the risk."  See Hurley v. State, 401 P.3d 827, 833 (Wyo. 2017).  It found that the source of restraint (locking someone in a motel room) does not need to be the same as the risk of serious bodily injury (the threat to beat someone up if they attempted escape).  Id. Similarly, the New Hampshire Supreme Court found that tying an elderly woman's hands on a couch risked serious bodily injury because she could potentially attempt to get up and lose her balance.  State v. Burke, 33 A.3d 1194, 1197 (N.H. 2011).

Likewise, if L.R. attempted to escape (again), he risked seriously injuring himself.  We believe it's not only the restraint, it's the circumstances surrounding the restraint, that demand scrutiny.  Here, it was improper to look at the restraint in isolation to determine the risk of serious bodily injury.

What about Aquino's state of mind?  The circuit court concluded that L.R.'s fall directly informed Aquino to the risk of danger.  L.R. fractured his back.  Indisputably, the court found that "L.R. suffered a serious bodily injury."  Yet, Aquino soon started chaining him again anyway.  Neither he nor his wife took L.R. to a doctor.  Restraining L.R. in a place where his only potential escape was 17 feet off the ground exposed him to

22

the risk of serious bodily injury.  And Aquino knew it.  The record supports the circuit court's conclusion that the "evidence shows beyond a reasonable [doubt Aquino] knew that he was exposing L.R. to the risk of serious bodily injury when he continued to restrain L.R. on the lanai between August 1, 2020, and August 21, 2021."

The circuit court made well-reasoned findings of fact and conclusions of law.  The evidence supports the court's finding that Aquino knew he was exposing L.R. to the risk of serious bodily injury when he continued to restrain L.R. with a chain on the lanai between August 1, 2020 and August 21, 2021.  The record supports all elements of unlawful imprisonment in the first degree.

**IV.**

We vacate the ICA's judgment on appeal and affirm the judgment of conviction and sentence of the Circuit Court of the Third Circuit.

Charles E. Murray III
for petitioner

R. Hermann Heimgartner
for respondent

/s/ Mark E. Recktenwald

/s/ Sabrina S. McKenna

/s/ Todd W. Eddins

/s/ Vladimir P. Devens

/s/ Rowena A. Somerville

