2024 IL App (2d) 230342-U
No. 2-23-0342
Order filed August 13, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 21-CF-1694 |
| SUWIT THONGJAREON, | ) ) ) | Honorable Elizabeth K. Flood, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Presiding Justice McLaren and Justice Mullen concurred in the judgment.

**ORDER**

¶ 1    *Held*: (1) Defendant's unlawful restraint and domestic battery convictions did not violate the one-act, one-crime rule, where a separate physical act supported each conviction, and neither offense was a lesser included offense of the other. (2) Defendant's convictions did not violate the principle of juror unanimity; there was only one possible basis for the unlawful restraint conviction, and although there were several possible bases for the domestic battery conviction, the jury returned a general verdict of guilty of domestic battery and it was immaterial whether they agreed on which acts constituted domestic battery.

¶ 2    After a jury trial, defendant, Suwit Thongjareon, was convicted of unlawful restraint (720 ILCS 5/10-3(a) (West 2020)) and domestic battery (*id.* § 12-3.2(a)(2)) and sentenced to 24 months' probation. On appeal, he contends that the domestic battery conviction must be vacated because

it was based on the same physical act as the unlawful restraint conviction. He also argues that his right to a unanimous jury verdict was violated. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     In the two-count indictment against defendant, count I, for unlawful restraint, alleged that he "knowingly and without legal authority detained Elizabeth Rose, in that [he] prevented [Rose] from leaving by grabbing, pulling, and/or using his body to keep [Rose] in place." Count II, for domestic battery, alleged that he "knowingly made physical contact of an insulting or provoking nature with [Rose], a family or household member *** , in that [he] grabbed and/or pulled [Rose] about the head and/or body."

¶ 5     In its opening statement, the State told the jury:

          "In August of 2021, [Rose] was married to this defendant and they share[d] a child in common.

          In August of 2021, this defendant went back to their shared apartment to retrieve something and when he went back there, he grabbed [Rose] by the arm and pulls her inside the apartment complex.

          [Rose] is in the hallway with the defendant and tries to leave and he grabs her again, pulled her, pushes her up against the apartment door, uses his arm to block her as he unlocks the apartment door, shoves her inside the apartment door so that she's not free to leave.

          You're not just going to hear about this but you are going to see this. There is a surveillance video that you are going to have the opportunity to see today.

          And at the end of the day today, *** I'm going to ask that you find the defendant guilty of both unlawful restraint and domestic battery."

¶ 6    Defendant responded that the videos showed physical contact between him and Rose but no criminal act.

¶ 7    Rose testified as follows. In August 2021, she and defendant were married with two children. On August 9, 2021, they went to their apartment building. Rose identified People's exhibit No. 1 (video 1) as a surveillance video recorded outside the building. She had watched the video before trial.

¶ 8    The video, which is silent, was published to the jury. The camera is positioned above the apartment building's entrance. The entrance itself is not visible from the camera angle. At 3:08:38 p.m., defendant, Rose, and their infant son Jaden appear. Defendant and Rose are walking on the grass toward the building's rear entrance. Defendant is clutching Rose by her left wrist as she holds Jaden in her right arm. They approach the rear door of the building. At 3:08:41 p.m., defendant pulls Rose and Jaden onto the walkway. As he releases his grip on Rose, she shakes her arm in pain. She appears upset. Defendant then briefly takes Rose by the left wrist again. Either she pulls away from his grip, or he releases it. He then takes the keys from her. At 03:08:59 p.m., he enters the building and disappears from camera view. Rose and Jaden then appear to be pulled inside, but the video does not show by what or whom.

¶ 9    After the video was played, Rose testified that she was "scared" during the depicted incident. She acknowledged that the video did not show who pulled her inside the building, but she affirmed that defendant did so.

¶ 10   Rose testified that she had watched People's exhibit No. 2, another surveillance video (video 2), which was recorded in the hallway inside the apartment building. Video 2 shows events occurring immediately after those shown in video 1.

¶ 11    Video 2, which also is silent, was published to the jury. At 3:09:16 p.m., defendant, Rose, and Jaden appear. Defendant is gripping Rose by her left wrist and approaches the apartment door. Rose is carrying Jaden and is visibly upset. Defendant pulls on Rose's arm, propelling her toward the apartment door, then releases her while he prepares to open the door. As defendant takes out his key to the apartment, he turns and speaks to Rose. She starts to walk toward the building's rear door. At 3:09:23 p.m., defendant reaches out, places his left hand on Rose's back, pulls her toward him, and then pushes her and Jaden between himself and the apartment door. As he unlocks the door, defendant holds Rose in place by pressing two fingers of his left hand (which is also gripping a bag) against her upper arm. They exchange words. She tries to pull away. He moves his left hand, still gripping the bag, behind her neck, evidently for greater leverage. She places her hand flat against the door frame as if to resist being forced into the apartment. At 3:09:37 p.m., defendant opens the door, pushes Rose and Jaden inside, follows them in, and closes the door.

¶ 12    Asked about the incident portrayed in video 2, Rose testified, "I feel terrified and scared at the same time in that moment because I don't know what's going on in his mind." She entered the apartment only because defendant pushed her in. He did not punch, bruise, or cut Rose.

¶ 13    Alexandra Martyn, a police detective, testified that, on August 17, 2021, she spoke to Rose, who was crying about the incidents. Martyn saw no injuries to Rose. Two days later, Martyn obtained the surveillance videos from the apartment building.

¶ 14    Both parties rested.

¶ 15    In closing argument, the State told the jury:

"So let's talk about unlawful restraint.

As we told you at the beginning of the trial, the defendant is charged with unlawful restraint against Ms. Rose. You heard her testify. You heard her tell you that she was

- 4 -

scared in the moments that you saw on that video. You saw the defendant pull her at the door and not let her leave. That is unlawfully and without legal authority detaining her. You saw her try walk away from the defendant. He wouldn't let her.

Now the defendant is also charged with domestic battery. To sustain the charge of domestic battery, the State must prove the following propositions. The first proposition is that the defendant knowingly made physical contact of an insulting or provoking nature with [Rose] and [the second proposition is that] [Rose] was then a family or household member of the defendant. ***.

For that first proposition, *** again, you saw the video. You saw him grab her and drag her into the apartment complex. You saw him grab her just outside of their individual apartment door and drag her back towards the door when she tried to walk away. You saw him hold her there refusing to let her leave. You saw him push her in through that door and over *** their apartment door and slam that door shut.

[Rose] told you that she was scared of the defendant and that she didn't want to stay in her house because of it. While she may not have used the exact words 'insulting' or 'provoked,' you can use your commonsense [*sic*], *** and infer how she felt, aside from the fact that she told you she was scared."

¶ 16 Defendant argued that the videos showed no hitting, kicking, slapping, or "any of the things that we would normally talk about in a domestic battery trial." The minimal contact that defendant made with Rose was not criminal. Defendant continued:

"What are some factors you might consider when determining whether or not [defendant] detained [Rose] that day? One, it's her own home. *** He was there to pick up some things. And, in fact, he succeeded in doing so.

After [defendant] got in, there was no indication that she wasn't free to leave, that she couldn't have left and gone wherever she wanted at that point. Really we have *** 30 to 60 seconds of an admitted disagreement between a husband and wife, but that is not criminal.

*** The other charge that we have is domestic battery, making insulting or provoking contact with her. He grabs her arm. At one point, he puts his hand on the back right shoulder of her. But you have to ask yourself is that insulting or provoking contact? *** And the answer is no. How do you know that? One, it didn't actually spark a fight. She told you he went in, he got his stuff, and left. And, two, you know that yourselves. It's slight contact that happened during an argument between them."

¶ 17   In rebuttal, the State argued:

"The defendant is not charged with domestic battery causing bodily harm here[.] *** What we did need to prove is what you saw in that video, physical contact of an insulting or provoking nature.

You see [defendant] and he is dragging her across the parking lot up to the apartment complex. She's visibly upset in that video. Of course, that is physical contact of an insulting or provoking nature. When she's in the hallway, she's trying to get away from him because of his physical contact of an insulting or provoking nature. ***.

For unlawful restraint, *** [Rose] did not feel like she was free to leave. She was scared. And look what happened when she tried to get away from him the first time. That's when he grabs her, he pulls her, and he pins her up against the door. What is she supposed to do? ***.

*** [T]he contact that you end up seeing here in this video, that is criminal. That is criminal. That is not acceptable contact between a husband and wife. And him making sure that she does not leave, that is unlawful restraint. ***."

¶ 18    The jury received a general verdict form for each of the two counts. The jury found defendant guilty of both counts. The trial court denied his posttrial motion and sentenced him to 24 months' probation. He timely appealed.

¶ 19                        II. ANALYSIS

¶ 20    On appeal, defendant contends that his conviction of domestic battery must be vacated because, as charged and argued to the jury, it was carved out of the same physical act as his conviction of unlawful restraint. See *People v. King*, 66 Ill. 2d 551, 566 (1977). Defendant argues primarily that, although separate acts were shown in the two videos, one outside the building (video 1) and one inside (video 2), the State treated all of his allegedly culpable conduct as a single act, distinguishing acts neither in the indictment nor during the trial. Thus, he concludes, we must vacate the less serious conviction, domestic battery. See 720 ILCS 5/10-3(b) (West 2020) (unlawful restraint is a Class 4 felony); *id.* § 12-3.2(b) (domestic battery is a Class A misdemeanor); *People v. Artis*, 232 Ill. 2d 156, 170 (2009) (if two offenses are carved from the same act, the court must vacate the less serious offense).

¶ 21    Defendant argues secondarily that the State's failure to distinguish between the two charged offenses violated his right to a unanimous jury decision on both counts. Defendant reasons that the jurors might have found him guilty of both counts without agreeing unanimously on which specific conduct constituted unlawful restraint and which constituted domestic battery.

¶ 22    The State contends that the one-act, one-crime rule was not infringed, because the State apportioned the charges fully, basing the charge of domestic battery solely on the act(s) in video 1

and the charge of unlawful restraint solely on the act(s) in video 2. The State reasons that, given this clear assignment of each charge to separate conduct, defendant was found guilty by a unanimous verdict of domestic battery.

¶ 23    Although defendant did not raise the issue in the trial court, a violation of the one-act, one-crime rule implicates the integrity of the judicial process and thus is reviewable for plain error. See *In re Samantha V.*, 234 Ill. 2d 359, 378-79 (2009). Similarly, although defendant did not raise the jury unanimity issue in the trial court, the alleged violation is also reviewable for plain error. See *People v. Jackson*, 2022 IL 127256, ¶ 47.

¶ 24    Initially, we must address the premises of each party's contentions. Defendant asserts that the State alleged and argued both offenses as a single undifferentiated act and did not suggest that either count was based exclusively on defendant's conduct in only one of the videos. See *People v. Crespo*, 203 Ill. 2d 335, 342-43 (2001) (where the indictment "charge[d] [the] defendant with the same conduct [*i.e.*, stabbing the victim] under different theories of criminal liability," allowing the State "to apportion the crimes among the various stab wounds for the first time on appeal would be profoundly unfair"). The State responds that it told the jury to base a conviction of unlawful restraint solely on his conduct in video 2 and to base a conviction of domestic battery solely on his conduct in video 1. We agree with neither party.

¶ 25    First, contrary to defendant's argument, the charges did not allege identical acts. Count I alleged that defendant committed unlawful restraint in that he detained Rose by "grabbing, pulling, *and/or* using his body to keep [her] in place" (emphasis added)—*i.e.*, defendant might have "us[ed] his body to keep [Rose] in place" *without* "grabbing" or "pulling" her. Count II alleged that defendant committed domestic battery in that he "grabbed and/or pulled" Rose. Thus, unlike count

II, count I enabled the jury to find defendant guilty of unlawful restraint by blocking Rose's escape without engaging in any *physical contact*.

¶ 26    More important, at trial, the State did not contend that defendant's conduct outside the building proved unlawful restraint.  In its opening statement, the State described defendant's conduct later shown in video 1 as him "grabb[ing]" Rose and "pull[ing]" her inside the apartment. It described his conduct, later shown in video 2, as him grabbing her, pulling her, pushing her against the apartment door, "us[ing] his arm *to block her*," and shoving her "*so that she*[ ] [*was*] *not free to leave*."  (Emphasis added.)  Only as to video 2 did the State use language uniquely applicable to unlawful restraint.  That offense requires detention of the victim, but domestic battery does not.  Compare 720 ILCS 5/10-3(a) (West 2020), with *id.* § 12-3.2(a)(2).

¶ 27    In its closing argument, the State also tied the unlawful restraint charge to the events shown in video 2.  It argued that the jury "saw [Rose] try to walk away from the defendant.  He wouldn't let her."  That sequence was unique to video 2**,** in which defendant pulled Rose toward the apartment door, she turned and walked down the hallway, and he pulled her back toward the apartment, eventually shoving her inside.  Video 1 did not fit the quoted argument.

¶ 28    In closing argument, defendant implied that the unlawful restraint charge depended wholly on his conduct in video 2.  He argued that the element of detention was not proved by what happened "[*a*]*fter he got in*," *i.e.*, into the apartment.  (Emphasis added.)  He did not cite video 1 as bearing on the charge.

¶ 29    In its rebuttal, the State proceeded consistently with the parties' previous arguments.  The State argued that both videos proved defendant guilty of domestic battery.  However, the State then specified that defendant's acts toward Rose "*when she*[ ] [*was*] *in the hallway*," including "*pin*[*ning*] *her up against the door*," constituted unlawful restraint.  (Emphasis added.)  Only in

reference to *video 2* did the State employ language unique to the charge of unlawful restraint, including the very term "unlawful restraint."

¶ 30    The State's theory at trial can be shown by its closing arguments. *Crespo*, 203 Ill. 2d at 343-344. Here, the State's closing arguments demonstrate that it intended to prove unlawful restraint solely by defendant's conduct inside the apartment building. We therefore agree with the State that count I, for unlawful restraint, was based solely on this conduct.

¶ 31    The State contends further that it based count II, for domestic battery, solely on defendant's conduct in video 1. We disagree. The conduct alleged in count I was not unique to the action in video 1. In its opening statement, the State told the jury that *both* videos would show defendant grabbing and pulling Rose—*i.e.*, committing domestic battery. In its closing argument, the State contended that defendant made physical contact of an insulting or provoking nature in both video 1 and in video 2. The State noted Rose's testimony that she was "scared," which she used to describe her feelings during both incidents in the videos. In his closing argument, defendant correspondingly argued that neither video showed criminal conduct. In its rebuttal closing argument, the State contended that both videos showed contact of an insulting or provoking nature. Thus, the State did not base count I solely on defendant's conduct in video 1.

¶ 32    Therefore, based on the State's theories of liability at trial, defendant's conviction of unlawful restraint had to be based solely on his conduct inside the apartment building. In contrast, his conviction of domestic battery might have been based on his conduct inside *or* outside the building. As we will explain, the two convictions would not violate the one-act, one-crime rule under any of these possibilities.

¶ 33    We employ a two-step analysis to determine whether the rule has been violated. *People v. Coats*, 2018 IL 121926, ¶ 12. In the first step, we ascertain whether the defendant's conduct

consisted of a single physical act or separate acts. *Id.* An "act" is " 'any overt or outward manifestation which will support a different offense.' " *Id.* ¶ 15 (quoting *King*, 66 Ill. 2d at 566). Thus, the rule does not apply merely because the same act is part of one offense and the only act of the other offense. *Id.* If the defendant committed multiple acts, we move to the second step: deciding whether any of the offenses are lesser included offenses. *Id.* ¶ 12. If not, then multiple convictions are proper. *Id.*

¶ 34 Here, defendant's conduct did not consist of a single act. His conduct in video 1 was separated by time and location from his conduct in video 2. Moreover, even had both convictions been based solely on defendant's conduct inside the building, video 2 showed separate acts supporting those convictions. When defendant grabbed Rose's wrist to prevent her from walking away, he arguably committed domestic battery. When he held her against the door as he opened it, he arguably committed the separate offense of unlawful restraint. Thus, the State satisfied step one.

¶ 35 We proceed to step two. To decide whether one offense is a lesser included offense of another for purposes of the one-act, one-crime rule, we use the "abstract elements test." *People v. Miller*, 238 Ill. 2d 161, 173 (2010). "If all of the elements of one offense are included within a second offense and the first offense contains no element not included in the second offense, the first offense is deemed a lesser included offense of the second." *Id.* at 166. This criterion was not met here. Battery requires physical contact with the victim. 720 ILCS 5/12-3(a), 12-3.2(a)(2) (West 2020). Unlawful restraint requires detention (*id.* § 10-3(a)), *i.e.*, some act that prevents the victim from moving from one place to another (*People v. Kittle*, 140 Ill. App. 3d 951, 956 (1986)). Physical force is not an element of the offense. *Id.* Thus, defendant's two convictions do not violate the one-act, one-crime rule.

¶ 36    Defendant relies on two opinions, in each of which the defendant was convicted of both aggravated unlawful restraint (the aggravating factor being the use of a weapon) and armed robbery, and the appellate court vacated the conviction of unlawful restraint.  See *People v. McWilliams*, 2015 IL App (1st) 130913, ¶ 1; *People v. Daniel*, 2014 IL App (1st) 121171, ¶ 1.  In each case, the appellate court explained that the defendant restrained the victim(s) at gunpoint throughout the robbery.  *McWilliams*, 2015 IL App (1st) 130913, ¶ 22; *Daniel*, 2014 IL App (1st) 121171, ¶¶ 54-55.  Thus, the restraint was concurrent with, and inherent in, the armed robbery. *McWilliams*, 2015 IL App (1st) 130913, ¶ 22; *Daniel*, 2014 IL App (1st) 121171, ¶¶ 54-55.  Here, as we explained, the unlawful restraint occurred inside the building, but the State alleged and argued that defendant committed domestic battery both outside and inside the building.  Moreover, although physical force was arguably inherent in defendant's restraint of Rose as he held her to the door, defendant had forced her over to the door by the separate act of pulling and pushing her— a domestic battery in itself.  Thus, defendant's cases are distinguishable.

¶ 37    We turn to defendant's other claim of error.  He contends that allowing the two convictions to stand "where the State did not apportion those convictions between separate acts results in a jury unanimity issue."  He elaborates:

"if the State intended the outside event to pertain to one charge, and the inside event to pertain to another, it is possible that some jurors did not believe the outside event was serious enough to warrant conviction on either charge, but based both guilty verdicts on the inside event, and it is possible that some jurors believed the inverse.  It is also possible that some jurors believed the outside event constituted unlawful restraint, and the inside event was the battery, and that some believed the inverse.

> *** [T]his possibility permits a guilty verdict to have been rendered without all 12 jurors agreeing that [defendant] restrained and/or battered Rose inside the complex only, or outside the complex only, or both inside and outside, or even which event pertained to which charge."

Defendant is correct that the right to a unanimous verdict is fundamental. *People v. McGhee*, 2012 IL App (1st) 093404, ¶ 24. However, his argument fails. First, as explained, the unlawful restraint conviction was based solely on defendant's conduct inside the building. Second, the fact that not all the jurors might have based the domestic battery conviction on the same instance of domestic battery—inside or outside the building—does not violate the principle of juror unanimity as developed in the case law.

¶ 38    We turn first to the authority defendant cites. In *People v. Filipiak*, 2023 IL App (3d) 220024, ¶ 3, as pertinent here, the State charged the defendant with two counts of predatory criminal sexual assault of the same child victim; the two counts differed only in that one count stated that it was based on " 'a different act' " than the other.[1]  The victim testified that the defendant twice placed his finger into her vagina, once right after she showered and again while she was asleep on a couch. *Id.* ¶ 6. The two verdict forms pertaining to the counts were identical except that one stated that it was for " 'finger in vagina-1' " and the other stated that it was for " 'finger in vagina-2.' " *Id.* ¶ 9. The jury was not instructed that it needed to be unanimous as to a specific count. *Id.* The jury found the defendant guilty of the former count but not the latter. *Id.*

¶ 39    On appeal, the court reversed the guilty verdict because the jury's intent could not be " 'ascertained with reasonable certainty from the language used.' " *Id.* ¶¶ 13, 16 (quoting *People v. Mack*, 167 Ill. 2d 525, 537 (1995)). Collectively, the verdicts and the record were insufficient

---

[1]A third count related to a second victim was not at issue in the appeal.

to determine "whether the jury intended to convict [the] defendant of the shower conduct while acquitting him of the couch conduct or vice versa." *Id.* ¶ 16. Thus, the court could not determine "whether the jury unanimously decided whether either offense was committed by [the] defendant." *Id.* ¶ 18. The court also noted:

> "[W]hile the State correctly observes that general verdict forms are permitted and do not require the jury to agree upon a specific incident to sustain a conviction, general verdict forms were not submitted to the jury here. The State cannot submit multiple nongeneral verdict forms, exposing [the] defendant to increased criminal liability, and then claim the jury was not required to agree on a specific act to sustain the conviction. [Citation.]" *Id.* ¶ 17.

¶ 40    In *People v. Scott*, 243 Ill. App. 3d 167, 168 (1993), the defendant was charged with three counts of unlawfully delivering drugs to three different undercover officers at three different times. Although there were three counts, the jury received just one verdict form and found the defendant guilty. *Id.* The appellate court found error, as it was possible that the jury had not been unanimous on any of the separate charges. *Id.* at 168-69. For instance, it was possible that only four jurors found the defendant guilty of the first delivery, only four found him guilty of the second, and only four found him guilty of the third. *Id.* at 169.

¶ 41    This case differs from *Filipiak* and *Scott*. Defendant was charged with a *single* count of domestic battery, and the jury was given one general verdict form for that offense. The jury unanimously found defendant guilty. It did not matter whether some jurors relied solely on his conduct outside the building and others relied solely on his conduct inside the building. As noted in *Filipiak*, "general verdict forms are permitted and do not require the jury to agree upon a specific incident to sustain a conviction." *Filipiak*, 2023 IL App (3d) 220024, ¶ 17.

¶ 42　On point is *People v. Roberts*, 351 Ill. App. 3d 684 (2004). There, the defendant was charged with one count of committing domestic battery (bodily harm) by pulling on his daughter's hair and striking her on the face with his hand. *Id.* at 685. The trial evidence tended to prove that he committed both acts. *Id.* at 686-87. At the jury instructions conference, the defendant requested a separate verdict form for each act alleged. *Id.* at 687. The trial court denied the request and provided a general verdict form. *Id.* The jury found the defendant guilty. *Id.* at 688.

¶ 43　On appeal, the defendant argued that the trial court's refusal to provide two special verdict forms meant that some of jurors might have found that only the hair-pulling caused the bodily harm and other jurors might have found that only the face-slapping caused the bodily harm. *Id.* at 690. The appellate court found no error. *Id.* at 691. The court explained that there was only one charge of domestic battery, which either act could prove. *Id.* Whether the jurors unanimously agreed on which act caused the bodily harm was irrelevant. *Id.* " 'All that is necessary is that the jury is unanimous that he is guilty of the offense, regardless of their agreement on the underlying conduct.' " *Id.* at 691 (quoting *People v. Travis*, 170 Ill. App. 3d 873, 892 (1988)).

¶ 44　Here, similarly, it is irrelevant whether all the jurors agreed on which "underlying conduct" was the insulting or provoking contact. Even if some relied solely on defendant's acts outside the building and others relied solely on his acts inside the building, all found that he committed domestic battery. Thus, we reject defendant's second claim of error.

¶ 45　　　　　　　　　　　　III. CONCLUSION

¶ 46　For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 47　Affirmed.